# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS VILKOFSKY, JR., | ) |
| Plaintiff, | ) |
| | ) 2:16-cv-01291-NBF |
| v. | ) |
| | ) District Judge Nora Barry Fischer |
| SPECIALIZED LOAN SERVICING, LLC, | ) |
| U.S. BANK, N.A., and | ) |
| RUSHMORE LOAN MANAGEMENT | ) |
| SERVICES, LLC, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

**I. INTRODUCTION**

Presently before the Court is the Partial Motion to Dismiss (Docket No. 15) filed by Rushmore Loan Management Services, LLC ("Rushmore"), and the Motion to Dismiss (Docket No. 26) filed by Specialized Loan Servicing, LLC ("SLS") and U.S. Bank, N.A. ("USB") (*collectively*, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants seek dismissal of all or a portion of the claims asserted by Francis Vilkofsky, Jr. ("Plaintiff") in his Amended Complaint (Docket No. 13). Plaintiff has therein asserted claims pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA"), the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq*. ("TILA"), the Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692, *et seq*. ("FDCPA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1, *et seq*. ("PUTPCPL"). Plaintiff also seeks an accounting from all Defendants. This Court exercises subject-matter jurisdiction over Plaintiff's

claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367(a) (supplemental). For the following reasons, Defendants' motions shall be GRANTED, in part, and DENIED, in part.

## II. Factual and Procedural Background

Plaintiff is the owner of a home in McKeesport, Pennsylvania. (Docket No. 13 ¶ 4). On or about January 18, 2011, Wells Fargo Bank – the holder of the mortgage at that time – commenced a foreclosure action in the Court of Common Pleas of Allegheny County. (Docket No. 13 ¶ 11). A modification to the mortgage was ultimately executed on or about January 3, 2013. (Docket No. 13 ¶ 12). The balance of the mortgage on the home was $137,975.97 as of that date. (Docket No. 13 ¶ 12). The monthly mortgage payment was set at $582.98, exclusive of incidental fees and tax escrows. (Docket No. 13 ¶ 13).

Upon execution of the modification, Wells Fargo Bank transferred the mortgage to USB. (Docket No. 32 at 1). USB thereafter employed Rushmore to service the loan. (Docket No. 32 at 1). Rushmore accepted all of Plaintiff's mortgage payments for the 2013 calendar year. (Docket No. 13 ¶ 16). This continued until August 2014, when Rushmore allegedly returned Plaintiff's mortgage payment without explanation. (Docket No. 13 ¶ 18). Correspondence between Plaintiff and Rushmore in September and October 2014 reveals that Rushmore had increased the amount of Plaintiff's monthly payments. (Docket Nos. 13-1 – 13-6). It was Rushmore's contention that Plaintiff had been notified of the increase – effective June 1, 2014 – in an Annual Escrow Account Disclosure Statement and Change of Payment Notice, dated April 4, 2014. (Docket No. 13-6). Plaintiff claims he did not receive the notice, and did not pay the increased amount as of the effective date. As such, Rushmore considered the account to be two months delinquent as of October 23, 2014, with the payment due September 1, 2014 still outstanding. (Docket No. 13-6).

Plaintiff states that he sent the correct amount to Rushmore in September and October 2014, but that his November check was again returned to him without explanation. (Docket No. 13-7). Checks continued to be sent to Rushmore, but were either held without being cashed, or were returned. Plaintiff also indicated that Rushmore had sent "inspectors" to his home to harass him. As of November 4, 2015, Rushmore considered Plaintiff to be fifteen payments delinquent. (Docket No. 13-16). Regular correspondence between Plaintiff and Rushmore did not resolve the matter. (Docket Nos. 13-8 – 13-17).

On December 28, 2015, SLS was employed by USB to service Plaintiff's mortgage instead of Rushmore. (Docket No. 32). Following a review of the financial records related to the mortgage, SLS concluded that there were no errors, the delinquency was proper, and that all fees due and owing to Rushmore were valid. (Docket No. 13-19). SLS also provided its summary of customer account activity. (Docket No. 13-20). SLS eliminated Rushmore's "excessive tax escrow," but still refused to cash Plaintiff's checks. (Docket No. 13 ¶¶ 39 – 40). SLS also charged late fees, and failed to use escrowed money to pay taxes. (Docket No. 13 ¶¶ 41, 44 – 45). SLS informed Plaintiff that it would not accept payment in any amount less than the full amount due and owing: $23,414.14 as of June 13, 2016. (Docket No. 13-19).

Plaintiff filed a Complaint (Docket No. 1) in this Court on August 24, 2016. An Amended Complaint (Docket No. 13) followed on October 20, 2016. The Amended Complaint contains the following claims:

- Count I – violation of RESPA by Rushmore for failing to timely disburse escrow money to pay real estate taxes, failing to properly respond to notices of errors, failing to correct errors, and failing to explain decisions;

- Count II – violation of TILA by Rushmore for failing to credit on-time payments, incorrectly assessing late fees, and failing to provide an accurate balance statement upon request;

- Count III – violation of the FDCPA by Rushmore for attempting to collect unauthorized or unlawful fees, misrepresenting Plaintiff's debt balance, and conducting harassing home inspections;

- Count IV – violation of the PUTPCPL by Rushmore for utilizing unfair and deceptive practices;

- Count V – requesting an accounting by Rushmore;

- Count VI – violation of RESPA by SLS for failing to timely disburse escrow money to pay real estate taxes, failing to properly respond to notices of errors, failing to correct errors, and failing to explain decisions;

- Count VII – violation of TILA by SLS for failing to credit on-time payments, incorrectly assessing late fees, and failing to provide an accurate balance statement upon request;

- Count VIII – violation of the FDCPA by SLS for attempting to collect unauthorized or unlawful fees, misrepresenting Plaintiff's debt balance, and conducting harassing home inspections;

- Count IX – violation of the PUTPCPL by SLS for utilizing unfair and deceptive practices;

- Count X – requesting an accounting by SLS; and,

- Count XI – claiming that USB shares *respondeat superior* liability with SLS.

In response, Rushmore filed a Partial Motion to Dismiss (Docket No. 15) on November 8, 2016. SLS and USB also filed a joint Motion to Dismiss (Docket No. 26) on November 30, 2016. Plaintiff's Response in Opposition (Docket No. 32) followed, as did a Reply by SLS and USB (Docket No. 43). On January 30, 2017, the Court entered an Order dismissing a number of Plaintiff's claims following a series of concessions made in his Response in Opposition. (Docket No. 45). The claims dismissed are as follows:

- All claims asserted against any Defendant pursuant to the PUTPCPL;

- All claims asserted against any Defendant pursuant to RESPA for alleged mishandling of Plaintiff's escrow account;

- All claims asserted against USB pursuant to TILA;

- All claims asserted against USB pursuant to RESPA;

- All claims asserted against Rushmore pursuant to the FDCPA for conduct occurring prior to August 25, 2015; and,

- All claims asserted against Rushmore pursuant to TILA for conduct occurring prior to August 25, 2015.

(*Id.*). A motion hearing and case management conference were convened on January 31, 2017. (Docket No. 46). Subsequently, the parties filed respective supplemental briefs. (Docket Nos. 50 – 52). The matter is now ripe for disposition.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of a claim, and show that the pleader is entitled to relief. Dismissal of a complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding

dismissal under Rule 12(b)(6) requires a pleading party's complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 – 35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 – 11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id.* In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F.3d at 213 (quoting *Graff v. Subbiah Cardiology Assoc., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of . . . facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555 – 56).

Nevertheless, the facts provided do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Phillips*, 515 F.3d at 231 – 32 (quoting *Twombly*, 550 U.S.

at 554 – 56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. DISCUSSION

Rushmore, SLS, and USB argue for dismissal of all or part of Plaintiff's Amended Complaint for varying reasons. For the sake of clarity, the Court will address these arguments based upon the applicable cause of action pursuant to which same are made.

### A. RESPA

Having conceded that he has no claims under RESPA for Defendants' handling of his funds in escrow, or against USB in any respect, the Court must only determine whether or not Plaintiff adequately pled a cause of action against Rushmore and SLS for the handling of Plaintiff's error notices.

#### 1. **Response to Notice of Error**

Regarding notices of error, RESPA provides the following:

(e) Response to notice of error.
    (1) Investigation and response requirements.
        (i) In general. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:
            (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
            (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

7

12 C.F.R. § 1024.35. RESPA also provides that a mortgage servicer "may, by written notice provided to a borrower, establish an address that a borrower must use" when submitting such a notice. 12 C.F.R. § 1024.35(c). However, the servicer must respond "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after" receipt, 12 C.F.R. § 1024.35(e)(3)(i)(C), unless an "asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond." 12 C.F.R. § 1024.35(g)(1)(i). In the latter circumstance, the servicer need only inform the borrower that it will not reply to the duplicative notice within five days of making such a determination. 12 C.F.R. § 1024.35(g)(2).

While Rushmore makes no argument regarding its treatment of Plaintiff's notices of error, SLS argues that it has no liability for conduct involving these notices because it fully complied with all of its obligations under RESPA. To this end, SLS indicates that the only notice of error addressed to it by Plaintiff was sent on May 9, 2016. (Docket No. 13-18). SLS timely responded on June 13, 2016. (Docket No. 13-19). SLS goes on to explain that it conducted a reasonable investigation and provided all required information, including: (1) a statement that no error has been found; (2) the reasons for this determination; (3) the borrower's right to request the documentation relied upon by the servicer; (4) the information necessary to make said request; and (5) contact information for further assistance. (Docket No. 27 at 9). Nevertheless, Plaintiff contends that the documentation provided was so incomprehensible, and SLS's explanation of its investigation so cursory, that the response failed to comply with RESPA. (Docket No. 32 at 5 – 7).

In his May 9, 2016 letter to SLS, Plaintiff details the history of his mortgage issues thusly:

- Rushmore cashed all monthly payments during 2013. They cashed ten monthly payments during 2014 and placed the funds from payment July 2014 in suspended funds. The only payment cashed by Rushmore during 2015 was April and that money was also placed in suspended funds.
- The May 2016 payment coupon from SLS states that the monthly payment is now $969.63 with $1,752.82 in suspended funds. Total due is $20,662.55.
- Rushmore did not cash 13 monthly payments. SLS has not cashed 5 monthly payments. SLS claims that the monthly P&I is $583.25. The P&I times 18 payments not cashed equals $10,493.64. SLS is asking for escrow in the amount of $6,959.70. Adding the outstanding P&I and escrow equals $17,453.34. Additionally Rushmore and now SLS are charging me $29.14 as a late fee for each check not cashed for a total of $524.52. I am also being charged interest on unpaid interest that would have been paid if Rushmore/SLS would have cashed the checks.
- Total taxes for my home are approximately $3500 per year and the insurance is $1100. I personally paid the insurance for 2016 myself. Rushmore failed to pay the real estate taxes for 2015. I additionally paid that bill myself. Rushmore/SLS has held $1752.82 in suspended funds yet I am not getting any interest on this money. Your May statement says I am $5,522.80 in arrears for the escrow account.
- Rushmore conducted a vigorous schedule of home inspections at my residence as a harassment tactic. I was informed that my account was being charged for each inspection. See attached list.
- SLS & Rushmore ruined my credit. See attached.

(Docket No. 13-18 at 3). He continued by making the following demands:

- All late fees and additional fees applied by Rushmore/SLS must be removed from my account. My family did nothing wrong. This was initiated by Rushmore without my family being aware of their actions. I consider these actions as FRAUD.
- All additional interest charged to my account by not cashing the monthly checks must be removed.
- I will receive interest on all suspended funds.
- I will only pay the P&I monthly and will pay the taxes and insurance myself.
- Rushmore/SLS will refund to me the late fees I incurred due to the fact that Rushmore did not pay the 2015 real estate taxes. See attached.
- I must receive a written apology from Rushmore/SLS for creating this problem and causing the enormous mental stress to my family. I will furnish SLS with a bank account number so the P&I can be deducted on the 1st of each month. This will limit any contact between my family and SLS.
- Rushmore/SLS must return to me all outstanding checks being held for the past due 18 months. As each check is received by me, I will issue a check for the P&I for that particular month to bring my account current.
- SLS paid the 2016 County Taxes on my property without notifying me. I am a senior citizen. In Allegheny County I can receive a 30% discount once my

> application is approved. That is why I didn't pay it immediately myself. I am waiting for official approval. SLS must reimburse me the 30% savings.
> - All correspondence must be in writing so there are no misunderstandings.
> - Any solution to this problem must first be approved by my legal team.

(Docket No. 13-18 at 3 – 4). In SLS's response of June 13, 2016, it noted that it could find no errors in its calculation of a total amount due of $23,414.14. (Docket No. 13-19 at 2). SLS went on to state that:

> SLS is a third party servicer, contracted by the investor to service this loan per the terms of the original loan documents. We show that you completed a loan modification on January 1, 2013. According to our records the account balance and payments are correct. The fees on the account from the prior servicer are valid and payable; we cannot remove them. We have enclosed a copy of the prior servicer's fees, prior servicer's payment history, SLS payment history along with our transaction codes for your review.

(Docket No. 13-19 at 2).

A mortgage servicer is required to draft a response to a notice of error that – if the servicer indicates that no error was found – includes "a statement of the reason or reasons for this determination," among other factors. *Wilson v. Bank of America, N.A.*, 48 F.Supp.3d 787, 804 (E.D. Pa. 2014). To that end, the servicer must "provide 'a statement of the reasons for which the *servicer believes*' the accounting is correct." *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F.Supp.2d 503, 509 (E.D. Pa. 2010) (citation omitted). "A reasonable explanation of the servicer's belief is sufficient, even if it is later determined that the belief is erroneous." *Id.*

However, the Court cannot at this juncture conclude that SLS's statement, i.e. that "[a]ccording to our records the account balance and payments are correct," is sufficient to constitute a statement of the reasons for the determination that the "fees on the account from the prior servicer are valid and payable [and] we cannot remove them." The June 13, 2016 response, even in conjunction with the documents attached thereto, provides no explanation for how SLS came to such a conclusion. As noted by the district court in *Wilson*, under the guidelines of 12

C.F.R. § 1024.35(e)(1)(i)(B) a "servicer must…conduct a 'reasonable investigation.'" 48 F.Supp.3d at 804. The regulation "imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement…" *Id.* (citing *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 724 (S.D. Ohio 2014) (holding that mere form response to Notice of Error and Request for Information did not satisfy RESPA's requirements)).

Thus, even were this Court to assume that SLS's June 13, 2016 response does – on its face – meet the other technical requirements of 12 C.F.R. § 1024.35(e)(1)(i)(B), the question of whether or not SLS fully complied with RESPA requires the Court to determine that SLS's investigation was reasonable. *Wilson*, 48 F.Supp.3d at 804. At this stage in the litigation, and drawing all inferences in the light most favorable to Plaintiff, SLS's statement of reasons does not permit such a conclusion. Dismissal is not, therefore, warranted on this point.

### 2. Damages

Yet, SLS still asserts that a RESPA claim cannot be maintained because Plaintiff has pled no actual damages beyond generalized claims of harm to Plaintiff's credit rating and his emotional health. (Docket No. 27 at 12 – 14). Rushmore similarly argues that Plaintiff has not adequately pled non-pecuniary damage to his emotional health. (Docket No. 16 at 7). "A plaintiff claiming a RESPA violation must allege not only a breach of a duty required to be performed under RESPA, but must also show that the breach caused him to suffer damages." *Wilson*, 48 F.Supp.3d at 799. In order to advance a claim under RESPA, a plaintiff must "sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605." *Giordano v. MGC Mortgage, Inc.*, 160

F.Supp.3d 778, 781 (D.N.J. 2016) (citations omitted). "[W]hen basing a claim on actual damages, 'the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and their injuries.'" *Id.* (quoting *Straker v. Deutsche Bank Nat'l Trust*, 2012 WL 7829989 *11 (M.D. Pa Apr. 26, 2012)).

Plaintiff claims that his allegations of emotional distress are sufficient to survive dismissal. To provide the requisite causal showing, he points to two letters sent to Rushmore in September and October 2015, and one to SLS in May 2016, in which Plaintiff explicitly mentions his restlessness, fear, stress, and sleepless nights. (Docket No. 32 at 12 – 13). It is true that courts have found emotional distress damages to be consistent with RESPA's express language allowing "for '*any* actual damages to the borrower.'" *Giordano*, 160 F.Supp.3d at 785 (quoting 12 U.S.C. § 2605(f)). *See also Palmer v. MGC Mortgage, Inc.*, 2013 WL 6524648 *5 (E.D. Pa. Dec. 10, 2013) (citing *Benner v. Bank of America*, 917 F.Supp.2d 338 (E.D. Pa. 2013); *Wright v. Litton Loan Servicing LP*, 2006 WL 891030 (E.D. Pa. Apr. 4, 2006)) ("[W]hile our Court of Appeals has not determined whether "actual damages" under RESPA includes non-pecuniary damages such as emotional distress, several courts in our district have found that it does."). However, "bare allegations are insufficient as they do not establish that the alleged distress was 'as a result of' the failure to respond…as opposed to the financial hardships" also suffered. *Giordano*, 160 F.Supp.3d at 785 (citation omitted). "If a plaintiff simply can allege that failure to respond to a letter caused distress, without more, any RESPA claim would survive a motion to dismiss." *Id.* The RESPA violation must proximately cause the emotional distress. *Block v. Seneca Mortg. Serv.*, -- F.Supp.3d --, 2016 WL 6434487 *23 (D.N.J. Oct. 31, 2016).

Plaintiff's Amended Complaint simply states that "Plaintiff has experienced emotional distress as a result of Defendants' actions." (Docket No. 13 ¶ 49). Upon review of the single

notice of error sent to SLS, in conjunction with the allegations in the Amended Complaint, it appears that there was some degree of emotional distress as a result of prior attempts to resolve Plaintiff's unpaid mortgage balance; but, Plaintiff does not indicate how SLS's purported violation of 12 C.F.R. 1024.35(e)(1) caused – or contributed to – this emotional distress. A plaintiff must plead facts demonstrating a clear causal link between a defendant's violations and his injuries. *Hager v. CitiMortgage, Inc., et al.*, 2017 WL 751422 *9 (D.N.J. Feb. 27, 2017). Here, even viewed in the light most favorable to Plaintiff, it seems that his emotional distress was primarily connected to conditions existing before SLS responded to the notice of error – defeating said claim against SLS. The same cannot be said of alleged emotional distress stemming from Rushmore's conduct. Plaintiff has pled sufficient factual matter to connect his emotional distress to Rushmore's allegedly continual failure to properly respond to notices of error. Thus, the Court will dismiss the RESPA claim against SLS to the extent non-pecuniary actual damages from emotional distress are claimed, but will deny Rushmore's motion as to same.

Plaintiff also asserts the existence of actual damages by way of his low credit rating. However, allegations of pecuniary loss must be pled under the same standard as non-pecuniary loss for emotional distress. *Id.* SLS argues that there is no evidence that Plaintiff's diminished credit rating resulted from SLS's purported violations of 12 C.F.R. 1024.35(e)(1). Indeed, Plaintiff's pleadings appear only to demonstrate that his diminished credit rating existed before SLS's response to the notice of error. This is insufficient to sustain his claim against SLS for pecuniary actual damages under RESPA.

As to Plaintiff's claim for statutory damages, SLS argues that its response to Plaintiff's sole notice of error does not constitute a pattern or practice, as is required to sustain such a claim.

It is generally accepted that a plaintiff cannot establish entitlement to statutory damages based upon a single violation of RESPA. *Binder v. Weststar Mortgage, Inc.*, 2016 WL 3762710 *13 (E.D. Pa. July 13, 2016). Plaintiff attempts to salvage his claim for statutory damages by noting that SLS continually refused to negotiate Plaintiff's checks, and failed to explain its refusal. (Docket No. 32 at 7). Plaintiff does not, however, indicate how a failure to negotiate checks is related to SLS's purported violation of 12 C.F.R. 1024.35(e)(1) regarding notices of error. Based upon the above discussion, the Court must dismiss the RESPA claims against SLS to the extent Plaintiff argues that statutory damages are available. Given, then, that Plaintiff has failed to adequately plead non-pecuniary or pecuniary actual damages, or statutory damages, under RESPA as against SLS, Plaintiff's RESPA claim against SLS must be dismissed, without prejudice.[1]

### 3. **Address**

Finally, even if damages had been pled with sufficient specificity, SLS claims that Plaintiff's notices of error did not trigger RESPA because the notices were not sent to the correct address. In its briefing, SLS does not contest that it received Plaintiff's notices, and concedes that every part of the address to which Plaintiff's notices were sent was correct, with the exception of the post office box number. (Docket No. 27 at 7). Yet, the use of this purportedly incorrect post office box number allegedly never triggered SLS's RESPA duties[2], because once a

---

[1] Although Rushmore attacks Plaintiff's RESPA claim based upon pleading of actual damages in the form of non-pecuniary emotional harm, Rushmore does not otherwise contest the RESPA claim – including other allegations of actual damages and statutory damages. The Court will not, therefore, dismiss the RESPA claim as to Rushmore.

[2] There is disagreement as to this issue between district courts in the Third Circuit. *Cf. Benner v. Bank of America, N.A., et al.*, 917 F.Supp.2d 338, 364 – 65 (E.D. Pa. 2013) ("[N]owhere in the plain language of 12 U.S.C. § 2605(e) … is a borrower required to send his requests to a loan servicer's specified address; the law simply allows a loan servicer to establish such a place. What is required, though, is that the loan servicer actually receive the borrower's request for information.").

servicer properly designates[3] an address for receipt of such notices, notices which are received by a servicer via any other address may effectively be ignored. *Hager*, 2017 WL 751422 *8; *Binder*, 2016 WL 3762710 *6 – 8. *See also Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013) (citing *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 – 68 (9th Cir. 2012)) ("RESPA and its implementing regulation envisioned that only certain communications would trigger liability.").

It is Plaintiff's contention that the post office box number used "must have come from SLS." (Docket No. 32 at 5). Plaintiff asserts that discovery will reveal evidence that SLS provided him with the other post office box number as an acceptable means of communication for purposes of sending notices[4]. (*Id.*). Yet, SLS provides two letters (Docket Nos. 27-5 at 3; 27-6 at 2) it argues contradict this assertion by Plaintiff, and the Court notes that the Amended Complaint makes no mention of the origin of the address utilized by Plaintiff when filing his notices. Thus, having failed to affirmatively plead that he used the correct post office box number and that said number was designated by SLS as the appropriate means of delivering an error notice, dismissal on this point – without prejudice – is warranted.

---

[3] Contact information for borrowers to assert errors. A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section. The notice shall include a statement that the borrower must use the established address to assert an error. If a servicer designates a specific address for receiving notices of error, the servicer shall designate the same address for receiving information requests pursuant to § 1024.36(b). A servicer shall provide a written notice to a borrower before any change in the address used for receiving a notice of error. A servicer that designates an address for receipt of notices of error must post the designated address on any Web site maintained by the servicer if the Web site lists any contact address for the servicer.

12 C.F.R. § 1024.35(c).

[4] That the two addresses at issue were essentially identical – with the exception of the post office box numbers – lends some credence to this argument.

15

B. TILA

Plaintiff has conceded that he has no claim against Defendants for conduct violating TILA prior to August 25, 2015. Yet, Rushmore and SLS go further in arguing that TILA does not create any private cause of action against servicers, whatsoever. (Docket Nos. 27 at 17 – 19; 51; 52). As noted in *Barnes v. Carrington Mortgage Services, LLC*, "[t]he statute refers only to a creditor's liability – not a loan servicer's. 'Courts applying TILA uniformly hold that there is no servicer liability under TILA.'" 2016 WL 3018693 *1 (D.N.J. May 24, 2016) (citing *Lucien v. Fed. Nat'l Mortg. Assoc.*, 21 F.Supp.3d 1379, 1383 (S.D. Fla. 2014). *See also Khan v. Bank of N.Y. Mellon*, 849 F.Supp.2d 1377, 1380 (S.D. Fla. 2012) ("[S]ervicers have no liability for violations of TILA unless they are the current or former owner of the loan."). The *Barnes* court goes on to note that:

> Plaintiffs respond that TILA should not be read to impose no consequences on a loan servicer for undisputedly failing to comply with § 1639f. (See ECF No. 7 at 12-13.) However, Plaintiff's argument fails. Although TILA does not create a private cause of action against a loan servicer, it does impose consequences on a loan servicer who fails to comply with § 1639f. The statute allows for "[a]n action to enforce a violation of section ... 1639f... of this title [to] be brought by the appropriate State attorney general in any appropriate United States district court...." See 15 U.S.C. § 1640(e).

*Barnes*, 2016 WL 3018693 *2. As such, Plaintiff has no claims against Rushmore or SLS under TILA. Said claims must be dismissed, with prejudice.

C. FDCPA

SLS and USB argue that Plaintiff has not specified the provision of the FDCPA violated by their conduct, and that any claim thereunder must consequently be dismissed. (Docket No. 27 at 24 – 25). The Court observes that Plaintiff has noted only that Defendants qualify as "debt collectors" pursuant to 15 U.S.C. § 1692a(6). (Docket No. 13 ¶¶ 66, 90). Plaintiff otherwise alleges only that the FDCPA was violated by Defendants' attempt to collect fees and other

16

charges which are either unauthorized by the mortgage agreement or are prohibited by law. He also complains that the amount of his debt was misrepresented, and that the home inspections by Rushmore and SLS were excessive and intrusive. (Docket No. 13 ¶¶ 65 – 69, 89 – 93).

In order to state a cause of action under the FDCPA, Plaintiff must demonstrate that: (1) he is a consumer; (2) Defendants are debt collectors; (3) Defendants attempted to collect a "debt" as defined by the FDCPA; and (4) Defendants violated a provision of the FDCPA in attempting to collect the debt. *Sullivan v. Allied Interstate, LLC*, 2016 WL 7187507 *5 (W.D. Pa. Oct. 18, 2016) (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). Plaintiff has not identified the provision of the FDCPA under which he is asserting his claims. Thus, he has not properly stated a claim. 15 U.S.C. § 1692d governs harassment and abuse, and 15 U.S.C. § 1692e deals with false or misleading representations; however, there is no indication that Plaintiff is asserting a claim under either provision, or whether he satisfies the elements of each or some other provision of the FDCPA. Accordingly, Plaintiff's FDCPA claims against Defendants must be dismissed, without prejudice[5].

### D. PUTPCPL

As noted, above, Plaintiff conceded that he does not have a cause of action against any of the Defendants under the PUTPCPL, and same was dismissed by prior order of this Court.

### E. ACCOUNTING

In their Motion to Dismiss, SLS and USB argue that Plaintiff provides no authority for the assertion of an independent cause of action for an accounting. (Docket No. 27 at 25). The

---

[5] The Court will dismiss, *sua sponte*, the FDCPA claim as to Rushmore, even though Rushmore did not move for dismissal on the same grounds as those articulated by SLS and USB, because the Plaintiff had notice of the issue the Court would reach and had the opportunity to fully address it, and because the issue was equally applicable to both Rushmore and SLS. *D.G. v. Somerset Hills Sch. Dist.*, 559 F.Supp.2d 484, 504 n. 8 (D.N.J. 2008) (citing *Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006)).

Court notes that there is no indication in the Amended Complaint as to whether an accounting is being sought under state or federal law. The Court also notes that Pennsylvania has abolished an equitable accounting as an independent cause of action. *Global Arena, LLC v. Eterpreting, LLC*, 2016 WL 7156396 *2 (E.D. Pa. Dec. 8, 2016). Federal courts in Pennsylvania have generally held that an accounting is not a valid cause of action, but an equitable remedy. *ClubCom, Inc. v. Captive Media, Inc.*, 2009 WL 249446 *14 (W.D. Pa. Jan. 31, 2009). Plaintiff provides no authority for his assertion to the contrary. This claim must, therefore, be dismissed without prejudice.[6]

## V. CONCLUSION

Based upon the foregoing, the Court finds that: (1) Plaintiff has failed to state a claim under RESPA as to SLS, and that same shall be dismissed without prejudice; (2) Plaintiff cannot state a claim against Rushmore or SLS under TILA, and that same shall be dismissed, with prejudice; (3) that Plaintiff has failed to state a claim against Rushmore or SLS under the FDCPA, and that same shall be dismissed without prejudice; and (4) that Plaintiff has failed to state a claim against Rushmore or SLS for an Accounting, and that same must be dismissed without prejudice. Accordingly, Plaintiff shall be granted leave to amend his complaint, in conformity with this opinion, no later than March 17, 2017.

An appropriate order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: March 3, 2017

cc/ecf: All counsel of record.

---

[6] The Court will dismiss, *sua sponte*, the Accounting claims as to Rushmore, even though Rushmore did not move for dismissal on the same grounds as those articulated by SLS and USB. *See* footnote 5, *supra*.