# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS VILKOFSKY, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SPECIALIZED LOAN SERVICING, LLC, ) <br> U.S. BANK, N.A., and ) <br> RUSHMORE LOAN MANAGEMENT ) <br> SERVICES, LLC, ) <br> ) <br> Defendants. ) | 2:16-cv-01291-NBF <br><br> District Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

**I. INTRODUCTION**

Presently before the Court is the Motion to Dismiss (Docket No. 59) filed by Rushmore Loan Management Services, LLC ("Rushmore"), and the Motion to Dismiss (Docket No. 61) filed by Specialized Loan Servicing, LLC ("SLS") and U.S. Bank, N.A. ("USB") (*collectively*, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants seek dismissal of all causes of action by Francis Vilkofsky, Jr. ("Plaintiff"), in his Second Amended Complaint (Docket No. 58). Plaintiff has therein asserted claims pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA") and the Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692, *et seq.* ("FDCPA"). This Court exercises subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question). For the following reasons, Defendants' Motions shall be GRANTED, in part, and DENIED, in part.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of a claim, and show that the pleader is entitled to relief. Dismissal of a complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding dismissal under Rule 12(b)(6) requires a pleading party's complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 – 35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 – 11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id.* In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)).

Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F.3d at 213 (quoting *Graff v. Subbiah Cardiology Assoc., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof

of…facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555 – 56). To this end, the Court may consider the "pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference," when reviewing the sufficiency of a complaint upon a motion pursuant to Rule 12(b)(6). *Brodzki v. Fox Broadcasting Co.*, 868 F.Supp.2d 386, 388 (D. Del. 2012) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).

Nevertheless, the facts provided do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Phillips*, 515 F.3d at 231 – 32 (quoting *Twombly*, 550 U.S. at 554 – 56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III. DISCUSSION[1]

#### A. RESPA

As explained in the Court's prior Memorandum Opinion of March 3, 2017, disposing of Defendants' original Motions to Dismiss, the Court's inquiry as to Plaintiff's RESPA claims is solely whether or not Plaintiff pled sufficient factual matter to sustain causes of action for the improper handling of error notices, and related damages. (Docket No. 53 at 7).

##### 1. **Response to Notice of Error**

Regarding notices of error, RESPA provides the following:

---

[1] In light of the parties' familiarity with the factual background of the case, as well as the Court's prior, exhaustive recitation of the facts in its Memorandum Opinion of March 3, 2017 (Docket No. 53), the Court will limit its discussion to only those facts newly pled and pertinent to resolution of the instant Motions.

(e) Response to notice of error.
  (1) Investigation and response requirements.
    (i) In general. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:
      (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
      (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35. RESPA also provides that a mortgage servicer "may, by written notice provided to a borrower, establish an address that a borrower must use" when submitting such a notice. 12 C.F.R. § 1024.35(c). However, the servicer must respond "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after" receipt, 12 C.F.R. § 1024.35(e)(3)(i)(C), unless an "asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond." 12 C.F.R. § 1024.35(g)(1)(i). In the latter circumstance, the servicer need only inform the borrower that it will not reply to the duplicative notice within five days of making such a determination. 12 C.F.R. § 1024.35(g)(2).

In its prior Motion to Dismiss (Docket No. 15), and as previously noted by this Court (Docket No. 53 at 8), Rushmore made "no argument regarding its treatment of Plaintiff's notices of error." Presently, Rushmore contends that Plaintiff's RESPA claim against it must be dismissed because Plaintiff did not send any error notices to the appropriate address designated

4

pursuant to 12 C.F.R. § 1024.35(c).[2] (Docket No. 59 at 7 – 9). Whatever merits this argument may have, Rushmore may not assert it at this juncture. The Third Circuit Court of Appeals has held that the Federal Rules of Civil Procedure impose certain restrictions on the filing of successive motions to dismiss; namely, that a party that makes a motion under Rule 12 cannot make a subsequent motion under Rule 12 raising a defense or objection that could previously have been asserted. *Leyse v. Bank of America Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (citing Fed. R. Civ. P. 12(g)(2)). *See also Oliver v. Roquet*, -- F.3d --, 2017 WL 2260961, at *4 n. 3 (3d Cir. 2017) (A party, "with limited exceptions, 'must not make another such motion raising a defense or objection that was available to the party but omitted from its earlier motion.'"); *Dicio v. Wells Fargo Bank, N.A.*, 2015 WL 8276585, at *17 (W.D. Pa. Nov. 4, 2015) *report and recommendation adopted*, 2015 WL 8207486 (W.D. Pa. Dec. 7, 2015) (Fischer, J.) (In case in which a motion to dismiss was denied following the filing of an amended complaint, a subsequent motion to dismiss could not raise defenses not raised – although available – in the first motion.). As noted in Plaintiff's Response, "Plaintiff's Second Amended Complaint incorporates in its entirety and verbatim the same RESPA allegations made against Rushmore that were in the Amended Complaint." (Docket No. 64 at 2). Rushmore has failed to provide any intervening justification for its failure to raise this argument in an identical prior pleading.

---

[2] Contact information for borrowers to assert errors. A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section. The notice shall include a statement that the borrower must use the established address to assert an error. If a servicer designates a specific address for receiving notices of error, the servicer shall designate the same address for receiving information requests pursuant to § 1024.36(b). A servicer shall provide a written notice to a borrower before any change in the address used for receiving a notice of error. A servicer that designates an address for receipt of notices of error must post the designated address on any Web site maintained by the servicer if the Web site lists any contact address for the servicer.

12 C.F.R. § 1024.35(c).

Accordingly, the Court will not now consider it. Having raised no other objection to Plaintiff's RESPA claim, Rushmore's Motion to Dismiss will be denied as to Count I.

SLS also argues that its duties under RESPA were not triggered due to Plaintiff's failure to send notices of error to the address designated pursuant to 12 C.F.R. § 1024.35(c). (Docket No. 62 at 8 – 12). In response to the same argument in its prior Motion to Dismiss (Docket No. 26), this Court stated that Plaintiff "failed to affirmatively plead that he used the correct post office box number and that said number was designated by SLS as the appropriate means of delivering an error notice." (Docket No. 53 at 15). However, the Court did note that the fact that the address used by Plaintiff[3] was so similar to that designated by SLS[4] lent credence to Plaintiff's argument that he used an acceptable address. (*Id.* at n. 4).

The Second Amended Complaint now states that Plaintiff sent his error notice to SLS at P.O. Box 636005 which, while not the P.O. Box claimed by SLS in the Motion to Dismiss to be designated for receipt of same, was nonetheless previously provided to Plaintiff by SLS for sending error notices. (Docket No. 58 ¶¶ 42 – 46). Plaintiff also argues that SLS's response to his error notice – without any mention of the need to use another address – is further evidence that he utilized the correct address. (*Id.* ¶ 47 – 48). The Court agrees. A pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F.3d at 213 (citation omitted). For

---

[3] Specialized Loan Servicing, LLC
P.O. Box 636005
Littleton, CO 80163

(Docket No. 58 ¶ 42).

[4] Specialized Loan Servicing, LLC
P.O. Box 601347
Littleton, CO 80163

(Docket No. 62 at 11).

6

purposes of surviving a motion under Rule 12(b)(6), Plaintiff has pled a sufficient factual basis as to this issue so that it may proceed through discovery.

   2. **Damages**

Yet, SLS still asserts that a RESPA claim cannot be maintained because Plaintiff has pled no actual damages beyond generalized claims of harm to his emotional health. (Docket No. 62 at 12 – 15). As this Court noted in its prior Opinion, a "plaintiff claiming a RESPA violation must allege not only a breach of a duty required to be performed under RESPA, but must also show that the breach caused him to suffer damages." *Wilson v. Bank of America, N.A.*, 48 F.Supp.3d 787, 799 (E.D. Pa. 2014). In order to advance a claim under RESPA, a plaintiff must "sufficiently allege one of two types of damages: (1) actual damages[5] to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages[6] in the case of a pattern or practice of noncompliance with the requirements of § 2605." *Giordano v. MGC Mortgage, Inc.*, 160 F.Supp.3d 778, 781 (D.N.J. 2016) (citations omitted). "[W]hen basing a claim on actual damages, 'the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and their injuries.'" *Id.* (quoting *Straker v. Deutsche Bank Nat'l Trust*, 2012 WL 7829989 *11 (M.D. Pa Apr. 26, 2012)).

---

[5]  Despite SLS's argument to the contrary, the Second Amended Complaint includes claims for actual damages stemming from a diminished credit score as part of Plaintiff's claim. (Docket No. 58 ¶ 55). Nonetheless, as this Court previously held in its Memorandum Opinion of March 3, 2017, "Plaintiff's pleadings appear only to demonstrate that his diminished credit rating existed before SLS's response to the notice of error. This is insufficient to sustain his claim against SLS for pecuniary actual damages under RESPA." (Docket No. 53 at 13). The same holds true now, and any claim for actual damages against SLS pertaining to Plaintiff's credit score will be dismissed.

[6]  Despite SLS's argument to the contrary, the Second Amended Complaint includes statutory damages as part of Plaintiff's claim. (Docket No. 58 ¶ 1). However, as with his claim for actual damages stemming from diminished credit scores, Plaintiff has failed to remedy the issues the Court found with respect to statutory damages in its Memorandum Opinion of March 3, 2017. (Docket No. 53 at 13). Any claim for statutory damages against SLS will be dismissed.

Plaintiff believes that his revised allegations of emotional distress-related damages are sufficient to survive dismissal. He relies primarily upon the following comments made in a May 9, 2016, error notice to SLS:

> SLS has not cashed 5 monthly payments.
> …
> SLS is charging me $29.14 as a late fee for each check not cashed for a total of $524.52. I am also being charged interest on unpaid interest that would have been paid if…SLS would have cashed the checks.
> …
> SLS has held $1,752.82 in suspended funds yet I am not getting any interest on this money.
> …
> I am open to a solution to this problem but I will not pay any excess fee to SLS.

(Docket No. 58 ¶ 84). Plaintiff concluded his error notice by stating that SLS's conduct was "causing enormous mental stress for my family." (*Id.*). SLS's allegedly inadequate response to this error notice evinced in Plaintiff a belief that "his cries for help are being ignored," "his concerns are not worth SLS's effort," and "he is unable to get SLS to understand…that he is being cheated." (*Id.* ¶ 84 – 85). As such, he avers SLS's behavior is the proximate cause of "extreme stress worrying about whether he will lose his home in foreclosure." (*Id.*).

Federal courts have concluded that damages for emotional distress are consistent with RESPA's express language allowing "for '*any* actual damages to the borrower.'" *Giordano*, 160 F.Supp.3d at 785 (quoting 12 U.S.C. § 2605(f)). *See also Palmer v. MGC Mortgage, Inc.*, 2013 WL 6524648 *5 (E.D. Pa. Dec. 10, 2013) (citing *Benner v. Bank of America*, 917 F.Supp.2d 338 (E.D. Pa. 2013); *Wright v. Litton Loan Servicing LP*, 2006 WL 891030 (E.D. Pa. Apr. 4, 2006)) ("[W]hile our Court of Appeals has not determined whether actual damages under RESPA includes non-pecuniary damages such as emotional distress, several courts in our district have found that it does."). Nonetheless, "bare allegations are insufficient as they do not establish that the alleged distress was 'as a result of' the failure to respond…as opposed to the financial

hardships" also suffered. *Giordano*, 160 F.Supp.3d at 785 (citation omitted). "If a plaintiff simply can allege that failure to respond to a letter caused distress, without more, any RESPA claim would survive a motion to dismiss." *Id.* The RESPA violation must proximately cause the emotional distress. *Block v. Seneca Mortg. Serv.*, -- F.Supp.3d --, 2016 WL 6434487 *23 (D.N.J. Oct. 31, 2016).

In arguing that Plaintiff's Second Amended Complaint does not satisfy the pleading requirements for actual damages in the form of emotional distress, SLS relies substantially upon the holding in *Szczodrowski v. Specialized Loan Servicing, LLC*, 2015 WL 1966887, at *7 – 8 (E.D. Mich. May 1, 2015) (claim for emotional damages due to "stress" was not, alone, sufficient to maintain claim). Additionally, this Court previously held that while it appeared in the Amended Complaint that Plaintiff experienced some degree of emotional distress as a result of prior attempts to resolve Plaintiff's unpaid mortgage balance, Plaintiff did not indicate how SLS's purported violation of 12 C.F.R. 1024.35(e)(1) was the proximate cause. (Docket No. 53 at 12 – 13). Plaintiff must plead facts demonstrating a clear causal link between SLS's violations and his injury. *Hager v. CitiMortgage, Inc., et al.*, 2017 WL 751422 *9 (D.N.J. Feb. 27, 2017).

Now, viewed in the light most favorable to Plaintiff, it appears Plaintiff has pled sufficient factual matter to connect his claimed emotional distress to SLS's failure to properly respond to his notice of error. Unlike his Amended Complaint, Plaintiff's Second Amended Complaint clearly articulates that *SLS's* failure to properly address his error notice caused emotional distress. As recited by the Court, above, Plaintiff stated that SLS's conduct was "causing enormous mental stress for my family," and evinced in Plaintiff a belief that "his cries for help are being ignored," "his concerns are not worth SLS's effort," and "he is unable to get SLS to understand…that he is being cheated." ((Docket No. 58 ¶¶ 84 – 85). He concludes by

9

averring that SLS's behavior resulted in "extreme stress worrying about whether he will lose his home in foreclosure." (*Id.*).

In *Szczodrowski*, the district court held that "'[r]ecoverable emotional distress requires a highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury).'" 2015 WL 1966887, at *7 – 8 (quoting *Eichholz v. Wells Fargo Bank, N.A.*, 2011 WL 5375375, at *5 (E.D. Mich. Nov. 7, 2011)). The court went on to note that "unpleasant emotion" is not emotional distress. *Id.* However, it also found that the Seventh Circuit Court of Appeals held that summary judgment was properly denied where the plaintiff described similar claims involving alleged sleep loss, depression, shakiness, headaches, and crying. *Id.* (citing *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011)).

Presently, Plaintiff has pled "enormous" and "extreme" emotional distress, stemming from worry caused by his sense that SLS ignored his cries for help; his concern regarding SLS's failure to investigate his claims; his belief that he has been cheated by SLS; and his concern that he is not being taken seriously by SLS, all of which may result in the loss of Plaintiff's home. While Plaintiff's terminology may not be sufficiently severe to persuade SLS of the existence of emotional distress, it is more than the "threadbare allegation" of "stress" rejected by the district court in *Szczodrowski*, 2015 WL 1966887, at *8. *Cf. Giordano*, 160 F.Supp.3d at 785 ("The Court finds that Plaintiff's bare allegations are insufficient as they do not establish that the alleged distress was 'as a result of' the failure to respond to the RF1/QWR letter as opposed to the financial hardships she was already experiencing."). Plaintiff has nudged his claim across the line from conceivable to plausible. *Phillips*, 515 F.3d at 234 – 35. Thus, the Court will deny SLS's Motion to the extent is seeks dismissal of Count III.

## B. FDCPA

In order to state a cause of action under the FDCPA, Plaintiff must demonstrate that: (1) he is a consumer; (2) Defendants are debt collectors; (3) Defendants attempted to collect a "debt" as defined by the FDCPA; and (4) Defendants violated a provision of the FDCPA in attempting to collect the debt. *Sullivan v. Allied Interstate, LLC*, 2016 WL 7187507 *5 (W.D. Pa. Oct. 18, 2016) (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). Defendants argue that Plaintiff has failed to make this showing.

### 1. **Debt Collector**

In its Motion to Dismiss, Rushmore argues that the second element of the above test cannot be established by Plaintiff, and warrants dismissal of Count II. A "debt collector" pursuant to 15 U.S.C. § 1692a(6) is:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

However, a creditor's assignee may not be characterized as a debt collector for purposes of the FDCPA if the obligation was not in default when assigned. *Warren v. Wells Fargo Bank, N.A. ex rel. Wells Fargo Bank Minnesota, N.A.*, 2015 WL 6393111, at *4 (W.D. Pa. Oct. 21, 2015) (McVerry, J.) (citing *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000)). *See also Block*, 2016 WL 6434487, at *19 ("[T]he servicer of a residential mortgage loan is not a 'debt collector' if the loan in question is not in default when acquired by the servicer."). Further, when a plaintiff does not plead facts sufficient to demonstrate that a mortgage was in default at the time a defendant mortgage-servicer began servicing the loan, the plaintiff's FDCPA claim should be dismissed. *Warren*, 2015 WL 6393111, at *4 (citing *Owens v. JP Morgan Chase Bank*, 2013 WL 2033149, at *4 (W.D. Pa. May 14, 2013) (Mitchell, M.J.)).

The Second Amended Complaint is devoid of any such showing. (Docket No. 58 ¶¶ 70 – 75). Rather, Plaintiff has pled that Rushmore accepted all mortgage payments from 2013 through August 2014, and that had Rushmore cashed his checks after August 2014, Plaintiff would have been current[7]. (Docket No. 58 ¶¶ 17 – 18, 29). Thus, in the Court's estimation, the Second Amended Complaint establishes only that Rushmore was initially "servicing a current payment plan rather than demanding payment on a defaulted loan." *Owens*, 2013 WL 2033149, at *4. Conclusory assertions aside, Plaintiff has not alleged evidence sufficient to support his claim that the mortgage was still in default at the time Rushmore became the servicer. (*Id.* ¶ 8). Accordingly, Count II must be dismissed, because Rushmore is not a "debt collector" for purposes of the FDCPA.

### 2. **Home Inspection**

In its Motion to Dismiss, SLS asserts that Plaintiff's FDCPA claim against it must be dismissed, because the Second Amended Complaint narrowed the claim to focus solely upon the use of excessive home inspections to harass Plaintiff and pressure him to pay all monies due and owing. (Docket No. 62 at 15 – 19). In the Second Amended Complaint, Plaintiff pleads the following violations by SLS:

(a) Imposing excessive and obtrusive home inspections on the Plaintiff that were in no way necessary to protect the real estate, but were solely done for the purpose of harassing and abusing the Plaintiff into unlawfully coercing the Plaintiff into making a payment on a debt he does not owe, and "... the natural consequence of which is to harass, oppress, [and] abuse" the Plaintiff, quoting 15 U.S.C. § 1692d;

(b) Using the ruse of "home inspections" that were not necessary and not performed to protect the real estate but were, in fact, a false pretext for

---

[7] The Court observes that Rushmore became the mortgage-servicer only after the mortgage was modified to avoid foreclosure. (Docket No. 58 ¶ 15). Plaintiff's "Exhibit A" provides that "[t]his Loan Modification Agreement ("Agreement"), made this 26th day of November, 2012, between FRANCIS VILKOFSKY ("Borrower") and **Specialized Loan Servicing LLC, as servicer for the current Note Holder ("Servicer")**, amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated June 25, 2007…" (Docket No. 58-1 at 2) (emphasis added). *See Brodzki,* 868 F.Supp.2d at 388 (the court may consider exhibits attached to the complaint at the motion to dismiss stage).

(c) Making the false and misleading representations that the Plaintiff must pay a high balance to bring his mortgage current when **Rushmore** knew for a fact that all **Rushmore** had to do to bring the mortgage current was to cash the Plaintiff's previously submitted checks, which misleading representations violated 15 U.S.C. § 1692e;

(d) Attempting to collect fees, and charges and expense incidental to the principal obligation that are not authorized by the agreement creating the debt or permitted by law because all **Rushmore** has to do is cash the checks it already received from the Plaintiff to eliminate the charges and expenses, in violation of 15 U.S.C. § 1692e.

(Docket No. 58 ¶ 95) (emphasis added). As pled, Plaintiff has limited his FDCPA claim against SLS solely to the nature of its home inspections. To the extent that SLS is arguing for dismissal based upon same, the Court will grant the Motion.

Debt collectors are prohibited from engaging in acts, "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Plaintiff's "Exhibit U[8]," purportedly showing the number of inspections conducted at Plaintiff's home, does not display a record of inspections after August 27, 2015, and SLS did not become the mortgage-servicer until 2016. (Docket No. 58-21). While Exhibit U states that there "were additional inspections after 8/27/2015," (*id.*), Plaintiff does not argue that home inspections are impermissible under the terms of the mortgage. (Docket No. 58 ¶ 95). All that Plaintiff argues is that SLS continued Rushmore's practice of ordering "unnecessary, excessive, obtrusive and harassing home inspections," without providing further details. (*Id.* ¶ 53). According to Plaintiff, these inspections persisted in spite of Plaintiff's requests to halt the practice, and were conducted on at least a monthly basis. (*Id.*). Plaintiff describes one instance in which a home inspector entered Plaintiff's home without permission or announcing his

---

[8] *Brodzki,* 868 F.Supp.2d at 388 (the court may consider exhibits attached to the complaint at the motion to dismiss stage).

presence. (*Id.* ¶ 54). Yet, this one particular occurrence admittedly took place during an inspection ordered by Rushmore, not SLS. (*Id.*). As to home inspections ordered by SLS, Plaintiff has provided to the Court nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Fowler*, 578 F.3d at 211. Labels and conclusions – "unnecessary, excessive, obtrusive and harassing" – are insufficient to sustain Plaintiff's cause of action, here; the Court requires a factual showing, not a broad assertion of unlawfulness. *Phillips*, 515 F.3d at 231 – 32. Plaintiff's FDCPA claim against SLS will, therefore, be dismissed[9].

### C. ACCOUNTING

This Court held previously that there is "no authority for the assertion of an independent cause of action for an accounting" in this case. (Docket No. 53 at 17). Further:

> [t]he Court notes that there is no indication in the Amended Complaint as to whether an accounting is being sought under state or federal law. The Court also notes that Pennsylvania has abolished an equitable accounting as an independent cause of action. *Global Arena, LLC v. Eterpreting, LLC*, 2016 WL 7156396 *2 (E.D. Pa. Dec. 8, 2016). Federal courts in Pennsylvania have generally held that an accounting is not a valid cause of action, but an equitable remedy. *ClubCom, Inc. v. Captive Media, Inc.*, 2009 WL 249446 *14 (W.D. Pa. Jan. 31, 2009). Plaintiff provides no authority for his assertion to the contrary. This claim must, therefore, be dismissed without prejudice.

(*Id.* at 17 – 18). Thus, to the extent Plaintiff continues to assert such a cause of action in the Second Amended Complaint, same is dismissed. To the extent that Plaintiff seeks an accounting as an equitable remedy under its remaining RESPA claims, SLS argues that RESPA does not provide for equitable relief. (Docket No. 71 at 4). *See* 12 U.S.C. § 2605(f)[10]. The Court agrees, and dismisses the RESPA claims inasmuch as an accounting is sought as an equitable remedy[11].

---

[9] The FDCPA claim against USB will, likewise, be dismissed as same is based solely upon the theory of *respondeat superior*. (Docket No. 58 ¶ 101).

[10] (f) Damages and costs

## IV. CONCLUSION

Based upon the foregoing, the Court finds that: (1) Plaintiff has adequately pled RESPA claims against Rushmore and SLS at Counts I and III of the Second Amended Complaint, but that said claims are dismissed to the extent that an accounting is sought as an equitable remedy; (2) Plaintiff cannot state a claim against Rushmore or SLS under the FDCPA at Counts II and

---

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1) Individuals
> In the case of any action by an individual, an amount equal to the sum of--
> >(A) any actual damages to the borrower as a result of the failure; and
> >(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.
> 
> (2) Class actions
> In the case of a class action, an amount equal to the sum of--
> >(A) any actual damages to each of the borrowers in the class as a result of the failure; and
> >(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $2,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--
> >>(i) $1,000,000; or
> >>(ii) 1 percent of the net worth of the servicer.
> 
> (3) Costs
> In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.
> 
> (4) Nonliability
> A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

12 U.S.C. § 2605.

[11] *See e.g. Reed v. Select Portfolio Servicing, Inc.*, 2017 WL 663139, at *7 (E.D. Tenn. Feb. 16, 2017) (Court is unable to broaden RESPA's scope to include equitable remedies); *Garrow v. JPMorgan Chase Bank, N.A.*, 2016 WL 2894066, at *5 – 6 (E.D. Mich. Apr. 27, 2016) (RESPA relief is limited to monetary damages); *Beck v. Wells Fargo Bank, Nat'l Assoc.*, 2011 WL 6217345, at * 4 (N.D. Cal. Dec. 14, 2011) (RESPA does not provide for equitable relief); *Malally v. BAC Home Loan Servicing, LLC,* 2010 WL 5140626, at *9 n. 13 (RESPA provides for neither equitable nor injunctive relief); *Becker v. Chicago Title Ins. Co.*, 2004 WL 228672, at *15 (E.D. Pa. Feb. 4, 2004) (equitable relief not available under RESPA).

IV, and same shall be dismissed; and (3) Plaintiff has failed to state a claim against USB at Count V pursuant to *respondeat superior*, and same shall be dismissed. In light of Plaintiff's attempts to establish the above claims in three separate complaints (Docket Nos. 1; 13; 57), in this Court's estimation, further attempts to amend Counts I and III with respect to equitable relief via an accounting, as well as all claims in Counts II, IV, and V, would be unsuccessful. Accordingly, same shall be denied with prejudice. *See Phillips*, 515 F. 3d at 245 – 46 (dismissal with prejudice is appropriate when leave to amend would be futile).

An appropriate order follows.

> */s/ Nora Barry Fischer*
> Nora Barry Fischer
> United States District Judge

Date: June 14, 2017

cc/ecf: All counsel of record.