IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS VILKOFSKY, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SPECIALIZED LOAN SERVICING, LLC, ) <br> U.S. BANK, N.A., and ) <br> RUSHMORE LOAN MANAGEMENT ) <br> SERVICES, LLC, ) <br> ) <br> Defendants. ) | 2:16-cv-01291-NBF <br><br> District Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff, the owner of a home in McKeesport, Pennsylvania, brought this action against the servicers of his mortgage for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"). Presently before the Court are the Motion to Exclude Testimony and Expert Report of Theresa Bishop (Docket No. 124) filed by Rushmore Loan Management Services, LLC ("Rushmore") and the Motion to Exclude Testimony of Theresa M. Bishop as an Expert and Lay Opinion Witness, and to Exclude Her Expert Report (Docket No. 126) filed by Specialized Loan Servicing LLC ("SLS") (*collectively* "Defendants"). The Court has now reviewed Rushmore's Motion (Docket No. 124), the Brief in Support of Rushmore's Motion (Docket No. 125), SLS's Motion (Docket No. 126), the Brief in Support of SLS's Motion (Docket No. 127), Plaintiffs' Brief in Opposition, (Docket No. 130), Rushmore's Reply Brief (Docket No. 132), SLS's Reply Brief, (Docket No. 134), and Plaintiff's Sur-Reply Brief (Docket No. 138). The parties waived the hearing and oral argument with regard to the Defendants' Motions and all supplemental briefing. (Docket No. 133). After careful

consideration of the parties' positions, and for the following reasons, Defendants' Motions are GRANTED, in part, and DENIED, in part.

II. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff Frank Vilkofsky is the owner of a home in McKeesport, Pennsylvania. (Docket No. 58 at ¶ 5). Vilkofsky alleges that the servicer of the mortgage on his home, Rushmore, accepted all of Vilkofsky's mortgage payments for the 2013 calendar year and up until August 2014, when Rushmore allegedly returned Vilkofsky's mortgage payment without explanation. (Docket No. 58 at ¶¶ 17-19). Correspondence between Vilkofsky and Rushmore in September and October 2014 reveals that Rushmore had increased the amount of Vilkofsky's monthly payments. (Docket Nos. 58-1 - 58-6). The parties dispute whether Vilkofsky had been notified of the increase. Nevertheless, Vilkofsky did not pay the increased amount as of the effective date and, as such, Rushmore considered the account to be two months' delinquent as of October 23, 2014, with the payment due September 1, 2014 still outstanding. (Docket No. 58-6).

Vilkofsky alleges that he sent multiple checks to Rushmore, but the checks were either held without being cashed or were returned. (Docket Nos. 58-2:58-18). As of November 4, 2015, Rushmore considered Vilkofsky to be fifteen payments delinquent. (Docket No. 58-16). Regular correspondence between Vilkofsky and Rushmore did not resolve the matter. (Docket Nos. 58-8 - 58-17).

On December 28, 2015, SLS replaced Rushmore as Vilkofsky's mortgage servicer. (Docket No. 58 at ¶¶ 40-41). Following a review of the financial records related to the mortgage, SLS concluded that there were no errors, the delinquency was proper, and that all fees due and owing to Rushmore were valid. (Docket No. 58-19). SLS also provided its summary of customer

---

[1] Given the Court's prior recitation of the facts in its Memorandum Opinion dated March 3, 2017 (Docket No. 53) and the parties' familiarity with the factual and procedural background, the Court will limit its discussion to only those facts pertinent to the instant Motions.

2

account activity. (Docket No. 58-20). SLS informed Vilkofsky that it would not accept payment in any amount less than the full amount due and owing: $23,414.14 as of June 13, 2016. (Docket No. 58-19).

On August 24, 2016, Vilkofsky initiated the instant action alleging violations of numerous consumer protection statutes by SLS, Rushmore, and U.S. Bank. (Docket No. 1). The claims in this case were subsequently narrowed to only those claims in Counts I and III of the Second Amended Complaint that allege violations of RESPA by the servicers of Vilkofsky's mortgage, Rushmore and SLS.[2] (Docket Nos. 54, 81). "A plaintiff claiming a RESPA violation must allege not only a breach of a duty required to be performed under RESPA, but must also show that the breach caused him to suffer damages." (Docket No. 80, at 7 (citing *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 799 (E.D. Pa. 2014)). Vilkofsky alleges that Rushmore and SLS's improper handling of error notices related to his mortgage caused him to sustain actual damages in the form of "enormous mental stress for [his] family" and "extreme stress worrying about whether he will lose his home in foreclosure." (Docket No. 58 at ¶ 84).

To further his claims, Vilkofsky has proffered Theresa Bishop, BS, MS, L.P.C., C.A.A.D.C. ("Bishop"), a licensed professional counselor, as an expert in this matter to testify regarding his alleged emotional distress, including anxiety and depression, and related damages. Bishop prepared an expert report dated December 9, 2018 (Docket No. 125-2, the "Bishop Letter") to "express [her] opinions regarding the psychological impact of Mr. Vilkofsky's mortgage problems on Mr. Vilkofsky, and the basis for those opinions." In said letter, she concludes that "Mr. Vilkofsky suffers from both anxiety and depression." (*Id.*).

---

[2] The Court dismissed said claims to the extent that an accounting was sought as an equitable remedy. (Docket No. 81).

## III. ALLEGED EXPERT CREDENTIALS

Bishop is a professional addiction counselor and mental health therapist. (*Bishop Depo.*, Docket No. 130-1, at 14-16). She earned a bachelor of science degree in social work in 2004 and a master of science degree in professional counseling in 2009 from Carlow University. (*Id.* at 13-14). Bishop became a Licensed Professional Counselor ("L.P.C.") in the Commonwealth of Pennsylvania in 2014, and earned an Advanced Certification in Drug and Alcohol Counseling ("C.A.A.D.C.") from the International Certification and Reciprocity Consortium in 2011. (*Id.* at 14). She is also certified to diagnose based on the criteria set forth in the Diagnostic and Statistical Manual of the American Psychiatric Association, Fourth Edition ("DSM-IV"). (*See Bishop Depo.* at 17-18).

She is currently employed by the Pennsylvania Organization for Women in Early Recovery ("POWER"), where she conducts in-home drug and alcohol assessments to determine an appropriate level of care and then makes referrals and recommendations. (*Id.* at 14). Prior to working at POWER, Bishop worked as a mental health therapist for approximately nine months for a community treatment team called Wesley Family Services. (*Id.* at 14-15). While at Wesley Family Services, Bishop worked with adults in the community who had been diagnosed with serious mental illness. (*Id.* at 15). She also worked as an addiction counselor at Tadiso Incorporated for approximately two years, where she provided counseling to people with opiate addictions. (*Id.* at 15-16). Prior to her work at Tadiso, she worked as a drug and addiction counselor and intake specialist at the Discovery House Pennsylvania. (*Id.* at 16). In her earlier roles, she was responsible for diagnosing patients as it related to drugs and alcohol, but has never diagnosed a patient with severe depression or anxiety. (*Id.* at 19).

Bishop has never published in the area of psychology or counseling, and has never conducted any peer-reviewed studies or research. (*Id.* at 14). Also, she has not served as an expert witness. (*Id.*). At this point in the litigation, Bishop has produced one expert report in the form of a two-page letter (Docket No. 125-2) as noted above, and sat for a deposition on February 12, 2018 (Docket No. 125-1).

## IV. ALLEGED EXPERT REPORT AND DEPOSITION TESTIMONY

Bishop testified at her deposition that she first met Vilkofsky in August 2015 after meeting him on the online dating website match.com, and the two developed a friendship. (*See Id.* at 21-22). She further testified that her conclusions in the Bishop Letter that Vilkofsky suffers from both anxiety and depression as a result of his interactions with the servicers of his mortgage are based on interactions with Vilkofsky during their friendship. (*Id.* at 34-35).

In support of her opinions, Bishop wrote that Vilkofsky discussed his personal life, "professional life and family matters" and that he expressed his frustrations about his experiences with "those entities that are handling his mortgage payments on his personal residence." (Bishop Letter, at 2). Bishop opined that "the emotional and physical issues that Mr. Vilkofsky has been experiencing over the last several years are the result of Mr. Vilkofsky's interactions with the entities that have been handling Mr. Vilkofsky's mortgage on his personal residence." (*Id.*).

Bishop testified that she has never seen Vilkofsky in a professional setting nor provided him with professional services (*Bishop Depo.* at 28, 34, 40), and that the methodology she would otherwise impose on a patient to reach a DSM-IV diagnosis was not employed in this case. (*Id.* at 34-35). Bishop further stated that she felt it would be unethical to provide Vilkofsky with a diagnosis due to their friendship. (*Id.* at 44).

Bishop does not have an engagement letter for this matter and is not being paid for her testimony or her report in this case. (*Id.* at 8-9, 27-28, 41, 44). Bishop did not maintain any notes of her conversations with Vilkofsky. (*Id.* at 27).

## V. DISCUSSION

The use of an expert witness at trial is governed by both the federal procedural and evidentiary rules. While Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinion testimony at trial, Rule 26 of the Federal Rules of Civil Procedure details the discovery procedures for the disclosure of expert witnesses, their reports, and matters considered by the expert.

### A. *Rule 26 Analysis*

Under FED. R. CIV. P. 26, a party must disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702" and "this disclosure must be accompanied by a written report," which must contain the following:

>  (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>  (ii) the facts or data considered by the witness in forming them;
>  (iii) any exhibits that will be used to summarize or support them;
>  (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>  (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>  (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(2)(A)-(B). "Rule 26 places the burden of providing the disclosures squarely on the party who has retained the expert." *Jennings v. Thompson*, 792 F. Supp. 2d 1, 5-7 (D.D.C. 2011). Failure to abide by the disclosure requirements in these provisions is governed by FED. R. CIV. P. 37(c)(1), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). To that end, the United States Court of Appeals for the Third Circuit has held that, "in considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties," a district court must consider:

(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;
(2) the ability of the party to cure that prejudice;
(3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and
(4) bad faith or willfulness in failing to comply with a court or discovery obligation.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (citation omitted). The court should also consider, "the importance of the excluded testimony." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977)).

Defendant SLS argues that the Bishop Letter does not contain a complete statement of all opinions the witness will express, the basis and reasons for the opinions, the facts (other than private conversations) and data considered in forming the opinions. (Docket No. 127, at 15-16). SLS maintains that because the Bishop Letter does not satisfy the basic requirements of Rule 26, the Bishop Letter must be excluded and Bishop must be prohibited from testifying. (*Id.*). In response, Vilkofsky argues that all of the information required by Rule 26 has been disclosed through the Bishop Letter and at her deposition. (Docket No. 138, at 3).

After considering the factors set out above, the Court finds that they weigh against striking the proffered testimony and expert report. First, Defendants have not expressly claimed prejudice related to the disclosures provided here pursuant to Rule 37(c)(1). Indeed, Defendants

7

were given the opportunity to cross-examine Bishop at her deposition and did in fact question her regarding the bases for her opinions and all facts and data she used in forming those opinions. Further, as SLS notes, Bishop did not rely on any documents to form or support her opinions, she has not published in the area of counseling or psychology, she has not conducted any peer-reviewed studies or research, and she has never testified as an expert at trial or deposition. (*Bishop Depo.* at 7-8, 13-14). Thus, prejudice to the Defendants is minimal given the contents of the Bishop Letter and the Bishop deposition, both of which the Defendants have challenged under Rule 702 and *Daubert*, as discussed in the next section of this opinion. Secondly, Bishop's proffered testimony is arguably a significant part of Vilkofsky's case and there is no evidence that the Rule 26 violation was made in bad faith or that the underlying information was willfully withheld. *See Konstantopoulos*, 112 F.3d at 719. Accordingly, the SLS Motion is denied to the extent it asserts that Bishop's testimony and report should be excluded pursuant to Rules 26 and 37.

  *B. Rule 702 Analysis*

   1. **Legal Standard**

 Federal Rule of Evidence 702, which memorializes the Supreme Court's landmark case, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the basic framework for the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>  (b) the testimony is based on sufficient facts or data;
>  (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods
> to the facts of the case.

FED. R. EVID. 702. The United States Court of Appeals for the Third Circuit has held that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Id*. In this role, the district court is not the finder of fact but must focus on the methodology of the expert in order to "satisfy itself that 'good grounds' exist for the expert's opinion." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (citing *Daubert*, 509 U.S. at 590); *In re TMI Litigation*, 193 F.3d 613, 713 (3d Cir. 1999) (district court should not conflate "its gatekeeping function with the fact-finders' function as the assessor of credibility"). "The District Court has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*." *Walker v. Gordon*, 46 Fed. Appx. 691, 694 (3d Cir. 2002) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53 (1999)).

"Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). The party that proffers the expert testimony is not required to prove to the court that the expert's conclusion is correct. *See Mitchell*, 365 F.3d at 244 (citing *Ruiz-Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (citations omitted)). The focus is on the process and methodology employed by the expert. *Id.* The Third Circuit has listed several factors it deems "important" in assessing an expert's methodology:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994).

The party proffering the expert must only demonstrate that the expert arrived at his or her conclusion in a reliable manner. *Id.*; *see also Kannankeril*, 128 F.3d at 809 ("The trial judge must be careful not to mistake credibility questions for admissibility questions."). Finally, the party asserting the admissibility of the proffered testimony has the burden to demonstrate, by a preponderance of the evidence, that the opinions are based on "good grounds." *Kannankeril*, 128 F.3d at 807.

### 2. Application to Bishop's Opinions

As the Third Circuit discussed in *Schneider ex rel. Estate of Schneider v. Fried*, to succeed on their motion to disqualify Plaintiff's expert witness, Defendants must show that Bishop's opinion fails to meet the requirements set forth in Rule 702, namely qualification, reliability, and fit. 320 F.3d at 404. Having fully considered Plaintiff's proffer of Bishop's expert testimony, the Court finds that Bishop's opinions are not admissible as expert opinions under *Daubert*. Nevertheless, the Court finds that Bishop may offer her observations of Vilkofsky as a lay witness. The Court now turns to its evaluation of the parties' arguments, starting with the expert's qualifications.

a. *Qualifications*:

As to Defendants' challenge to Bishop's qualifications to render her opinion regarding Vilkofsky's alleged anxiety or depression, an expert witness must demonstrate "specialized

10

knowledge" in the area of her testimony. *See Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) ("Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony."); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) ("It is well settled that "[q]ualification requires 'that the witness possess specialized expertise.'") (quoting *Schneider*, 320 F.3d at 404).

This requirement has been interpreted liberally, and the Third Circuit Court of Appeals has explained that a "broad range of knowledge, skills, and training qualify an expert." *Waldorf*, 142 F.3d at 625 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741-42). "This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." *Pineda*, 520 F.3d at 244 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741). Further, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Id.* (quoting *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)).

Defendant SLS does not dispute that, based upon her L.P.C. license and C.A.A.D.C. certification, Bishop may be qualified to perform a DSM diagnosis or render expert testimony on addiction issues. (Docket No. 127 at 9-10). However, both SLS and Rushmore argue that Bishop has no specialized knowledge, skill, experience, training or education relating to diagnosing anxiety or depression and therefore, Defendants argue that providing such a diagnosis is beyond the bounds of Bishop's expertise. (*Id.*). Vilkofsky counters that Bishop is qualified and permitted to diagnose mental disorders and that she has the qualifications to assess the presence of anxiety and depression and the cause of those conditions in an individual. (Docket No. 130, at 6).

While it is true that this is Bishop's first attempt to be judicially accepted as an expert in this area, under the liberal standard of admissibility, the Court finds that Bishop has a "broad range of knowledge, skills, and training" in mental health counseling. As noted above, Bishop is a licensed professional counselor with experience as a mental health therapist, private therapist, and as a drug and alcohol counselor. (*Bishop Depo.* at 13-19, 38). Although it is apparent that Bishop has focused both her training hours and continuing education on drug and alcohol counseling (*id.* at 36-39), Bishop is qualified to perform a DSM-IV diagnosis (*id.* at 17-18). The mere fact that Bishop does not have the prior experience that Defendants believe is the most appropriate does not render her unqualified. *See Pritchard v. Dow Agro Scis.*, 705 F. Supp. 2d 471, 482 (W.D. Pa. 2010), *aff'd*, 430 F. App'x 102 (3d Cir. 2011) ("That Dr. Omalu is also not an oncologist or hemopathologist, appropriate specialties in Defendants' view, and has not previously treated and/or diagnosed patients with NHL, does not preclude him from testifying as an expert in this matter."). These factors more properly bear on Bishop's credibility and the weight of her testimony rather than its admissibility. It appears to the Court that the real dispute between the parties involves Bishop's failure to perform the type of evaluation she is qualified to perform, an issue which goes to the reliability of her methodology, as the Court addresses below.

    b. *Reliability*

To be admissible, an expert's testimony must also be reliable; that is, it "must be based on the methods and procedures of science rather than on subjective belief or speculation; the expert must have good grounds for his [or] her belief." *Furlan v. Schindler Elevator Corp.*, 516 F. App'x 201, 205 (3d Cir. 2013) (*quoting In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742).

The United States Court of Appeals for the Third Circuit has articulated a series of non-exclusive factors to guide district courts when determining whether an expert's testimony is

reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742 n.8. To this end, Defendants argue that Bishop's testimony fails to show: (1) that she used any methodology at all, let alone a method of testing that was generally accepted, and (2) that the relationship between how the testing was conducted and the underlying method was adequate. (Docket No. 125, 127). Specifically, SLS argues that even if Bishop is deemed an expert, her methodology was non-existent as she admitted that she did not follow the normal procedure for diagnosing a patient, which would have included a detailed history and written diagnostic procedure. (Docket No. 127, at 12). Because Bishop openly admits that she did not follow the same diagnostic procedures that one would normally follow in order to properly diagnose a patient (*Bishop Depo.* at 19-20), SLS argues that she has not employed the same "intellectual rigor that characterizes the practice of an expert in the relevant field" as required by *Kumho* and is not "being as careful as [s]he would be in h[er] regular professional work." *See Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997). Rushmore likewise argues that Bishop did not use any diagnostics on Vilkofsky and instead relied on her subjective belief and speculation in forming opinions regarding an individual whom she has never seen in a clinical setting. (Docket No. 125, at 9). Vilkofsky counters that Bishop's opinions "are not of the earth shattering variety" and are "for the most part common sense." (Docket No. 130, at 6). Further, Vilkofsky argues that "Bishop's friendship with the Plaintiff and the lack of a formal client-counselor relationship between the Plaintiff and Ms. Bishop are fodder for cross-examination, but these are not factors that exclude Ms. Bishop's testimony." (*Id.*).

Having reviewed the record in this case, the Court agrees that Bishop's methods are not sufficiently reliable and that her proffered expert testimony must be excluded. Despite her credentials, as well as the fact that she issued a report and was deposed, Bishop admits that she

did not provide a professional diagnosis or conduct an evaluation of Vilkofsky as she would have done had she been professionally retained. (*Bishop Depo.* at 19-20). Instead, to reach her conclusions, Bishop relied on her observations of Vilkofsky and her discussions with Vilkofsky over the course of their friendship. (*Bishop Depo.* at 45-46). Even if Bishop made observations consistent with her training and expertise, her methodology is plainly unreliable under Rule 702 such that she cannot testify to a reasonable degree of medical certainty with respect to Vilkofsky's diagnosis. *See Pritchard*, 705 F. Supp. 2d 471 (examining the methodology requirement in depth). It is clear from the record that Bishop did not employ the protocol she would ordinarily use in her practice to reach conclusions about a patient's mental state. (*Bishop Depo.* at 19-20). In this regard, Bishop specifically admits that she believes that being in a "therapeutic relationship" with Vilkofsky would be an ethical and personal conflict in light of their relationship, and that she did not diagnose, examine, evaluate, or obtain and review his medical records prior to issuing her report. (*Id.*, at 43, 45-46, 50). This method, or lack thereof, fails the tests for reliability under *Daubert*. *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 745-46 (3d Cir. 2000) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n. 8 (3d Cir. 1994)).[3]

Thus, after reviewing her expert report and deposition testimony, it is this Court's opinion that this proposed expert has not employed sufficiently reliable methods in reaching her conclusions in this case. Therefore, Defendants' Motions are granted to the extent that they assert that Vilkofsky's expert does not meet the reliability prong of the *Daubert* test.[4]

---

[3] In addition, the Court agrees with Rushmore that the Plaintiff's proposed analogies are unpersuasive, as they raise more questions than answers.

[4] Having concluded that the methodology used by Bishop is not reliable and finding that her proffered expert testimony must be excluded, the Court need not address the "fit" prong of the *Daubert* analysis. *See Pritchard*, 705 F. Supp. 2d at 492.

### C. Lay Witness Testimony

Defendants argue that if Bishop is precluded from testifying as an expert witness and if her expert report is excluded from evidence, Bishop should similarly be precluded from offering her opinion testimony as that of a lay witness under Fed. R. Evid. 701.

Under Rule 701, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also Ferris v. Pennsylvania Fed'n Bhd. of Maint. of Way Employees*, 153 F. Supp. 2d 736, 745 (E.D. Pa. 2001); *Howard v. Rustin*, 2008 WL 1925102, at *5 (W.D. Pa. Apr. 30, 2008) (Fischer, J.). Lay witness testimony under Rule 701 must not drift into an analysis of causation in the context of a plaintiff's diagnosis. *Montoya v. Sheldon*, 286 F.R.D. 602, 614 (D.N.M. 2012) (citing *Ferris*, 153 F. Supp. 2d at 744-45).

Here, because her testimony fails the reliability test, Bishop can, at most, comment on her general interactions with Vilkofsky just as any other *fact* witness could do. For example, she can describe Vilkofsky's mood changes or decreased activities which she witnessed. However, Vilkofsky's specific diagnoses and their causation require expert testimony. *See Ferris*, 153 F. Supp. 2d at 743-46 (excluding testimony of doctor who was not qualified as an expert as to the causation of the plaintiff's mental conditions); *Villalba v. Consolidated Freightways Corp.*, 2000 WL 1154073, at *12-15 (N.D. Ill. 2000). Bishop's testimony will therefore be limited to her personal knowledge and observations. *See* FED. R. EVID. 602. The Court notes that Vilkofsky is also free to testify to these same issues. *See, e.g.*, *Ferris*, 153 F. Supp. 2d at 746. Thus, to the

15

extent that Bishop has anything to say, the Court has discretion to exclude such testimony in its entirety as unduly cumulative. *See* FED. R. EVID. 403.

Finally, counsel for Mr. Vilkofsky shall outline his proffer of Bishop's testimony, if any, and confer with opposing counsel and supply the Court with a proposed limiting instruction for trial.

### D. Attorney's Fees and Costs

Rushmore also seeks reimbursement of its attorney's fees and costs related to its Motion as a sanction. (Docket No. 125, at 11). Rushmore argues that "it is overwhelmingly clear that Bishop cannot qualify as an expert to testify in this matter" and, notwithstanding this fact, Vilkofsky refused to withdraw the Bishop Letter and testimony, forcing Defendants to incur unnecessary attorney's fees and costs associated with moving to disqualify Bishop and her report. (Docket No. 125, at 11). As a result, Rushmore contends that the Court should impose sanctions pursuant to FED. R. CIV. P. 11, 28 U.S.C. § 1927, and the Court's inherent authority to order sanctions. (Docket No. 125, at 10-14). Vilkofsky does not respond to this request for attorney's fees and costs. (Docket Nos. 130, 138). Nevertheless, for the following reasons, the Court will deny Rushmore's request.

FED. R. CIV. P. 11 provides in relevant part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

16

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b). Rule 11(b) requires the signer of a document filed with the court to make an inquiry into the facts and the law that is "reasonable under the circumstances," entailing a reasonable investigation into the facts and a normally competent level of legal research. *TEGG Corp. v. Beckstrom Elec. Co.*, 2008 WL 5216169, at *2 (W.D. Pa. Dec. 10, 2008) (Fischer, J.) (citing *Zuk v. Eastern Pa. Psych. Inst. of the Med. College of Pa.,* 103 F.3d 294, 299 (3d Cir.1996); *Simmerman v. Corino,* 27 F.3d 58, 62 (3d Cir.1994)). The Court determines the reasonableness of an inquiry by applying an objective standard. *See Garr v. U.S. Healthcare,* 22 F.3d 1274, 1278 (3d Cir.1994).

At the outset, the Court notes that Vilkofsky's motion is procedurally defective under Rule 11, as there is no evidence that the moving party complied with the safe harbor provisions of Rule 11 by serving a copy of the motion or details of the prospective sanction motion until said motion was filed with the Court. *See* FED. R. CIV. P. 11(c)(2) (stating that a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service"). In addition, Rule 11 requires a representation to the court in the form of a pleading, written motion, or other paper. FED. R. CIV. P. 11(b). Here, the Bishop Letter and proffered testimony was not, and was not required to be, presented to the court prior to the instant motion requesting sanctions under Rule 11. *Pritchard v. Dow Agro Scis.*, 2009 WL 1813145, at *6 (W.D. Pa. June 25, 2009) (Fischer, J.) (citations omitted). These discovery materials are not "papers" for which Rule 11 sanctions are available in this case. Regardless,

Rushmore has failed to meet its burden to demonstrate that sanctions under Rule 11 are appropriate in this case. *See* FED. R. CIV. P. 11; *TEGG*, 2008 WL 5216169, at *2-3 ("[T]he mere failure of a complaint to withstand a motion to dismiss is not enough to establish a Rule 11 violation. . . . the burden of proof and persuasion rests on the party moving for sanctions.") (citation omitted).

Rushmore has likewise failed to demonstrate that Plaintiff's counsel has acted in "willful bad faith" sufficient to warrant an award of costs, expenses and attorneys' fees pursuant to 28 U.S.C. § 1927. *See Wise v. Washington Cty.*, 2015 WL 1757730, at *10-14 (W.D. Pa. Apr. 17, 2015) (Fischer, J.) (examining 28 U.S.C. § 1927 requirements in depth); *E.E.O.C. v. U.S. Steel Corp.,* 877 F. Supp. 2d 278, 290, 287 (W.D. Pa. 2012) (Fischer, J.) (Section 1927 "limits attorney sanctions to situations in which an attorney has '(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct.'") (citations omitted); *Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 317 F. App'x 169, 172 (3d Cir. 2009) (same). "[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *E.E.O.C.,* 877 F. Supp. 2d at 288. Here, there is no evidence that Vilkofsky pursued the expert testimony or expert report for an improper purpose or in bad faith. Rather, he proffered this testimony to support damage claims in this litigation. As set forth above, Bishop's methodology is not sufficiently reliable for her to provide expert testimony, but she may be called upon to testify as a fact witness consistent with Rule 701. Hence, the Court will not impose sanctions under 28 U.S.C. § 1927.

Admittedly, a district court may sanction attorneys under its inherent power when the conduct is egregious or where the statutory provision is inadequate. *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 114 (3d Cir. 2011) (interpreting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175 (3d Cir.2002)). In resorting to inherent authority, a court should always exercise caution and look to the Federal Rules of Civil Procedure or a relevant statute prior to such exercise. *Pritchard*, 2009 WL 1813145, at *9 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (noting that courts should generally refrain from resorting to their inherent authority to impose sanctions when an appropriate rule applies). Because 28 U.S.C. § 1927 could afford relief, which in this instance the Court denied, and the Court does not find that Plaintiff and his counsel engaged in egregious behavior, the Court will not impose sanctions under its inherent authority.

## VI. CONCLUSION

The Court finds that the relevant considerations weigh against striking the proffered expert testimony under FED. R. CIV. P. 26. The Court has now exercised its gatekeeper duties and finds that Plaintiff's proffered expert, Theresa Bishop, has not met each of the *Daubert* requirements such that her opinions will not be admitted as expert testimony. Specifically, the methodology used by Bishop in her assessment is so seriously flawed that the proffered expert testimony does not meet the reliability requirements of Rule 702. Although she may not provide expert testimony, Bishop may offer her lay opinion of Vilkofsky's mental health subject to the limitations proscribed by Rule 701 discussed above. To that end, a limiting instruction will be given. Finally, the Court denies Defendant Rushmore's request for an award of attorney's fees and costs.

An appropriate order follows.

/s/ *Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: June 12, 2018

cc/ecf: All counsel of record.