# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANCIS VILKOFSKY, JR,      )
                               )
       Plaintiff,            )
                               )
v.                            )    Civ. A. No. 16-1291
                               )    Judge Nora Barry Fischer
RUSHMORE LOAN MANAGEMENT   )
SERVICES, LLC, SPECIALIZED LOAN  )
SERVICING, LLC and U.S. BANK, N.A.,  )
                               )
       Defendants.        )

## MEMORANDUM OPINION

### I.    INTRODUCTION

This case involves a mortgage dispute.  Plaintiff Francis Vilkofsky, Jr. ("Plaintiff") alleges that defendants, Rushmore Loan Management Services, LLC ("Rushmore") and Specialized Loan Servicing, LLC ("SLS") (collectively "Defendants"), violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, when they responded late and incompletely to his qualified written requests[1] ("QWR") and notice of errors[2] ("NOE").  Discovery has closed and both defendants have moved for summary judgment.  The matter is now ripe for disposition. Having considered the parties' positions and having evaluated the evidence in light of the standard governing motions for summary judgment and for the following reasons, Defendants' motions for summary judgment are granted.

---

[1]     A QWR is "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either asserts an error in the borrower's account or requests information relating to the servicing of the borrower's account. 12 U.S.C. § 2605(e)(1)(B).

[2]     A NOE is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

## II.     RELEVANT PROCEDURAL HISTORY

On March 17, 2017, Plaintiff filed his Second Amended Complaint against Rushmore, SLS, and U.S. Bank, N.A.  (Docket No. 57).  Counts I and II are claims against Rushmore for RESPA and Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, violations.  (*Id.*)  Counts III and IV are claims for RESPA and FDCPA violations against SLS.  (*Id.*)  Finally, Count V is a FDCPA claim against U.S. Bank, N.A.  (*Id.*)  All three of the defendants moved to dismiss on March 31, 2017.  (Docket Nos. 59, 61).  On June 14, 2014, this Court dismissed with prejudice Plaintiff's FDCPA claims, i.e., Counts II, IV, and V of the Second Amended Complaint.  (Docket No. 80).  The Court allowed Plaintiff's RESPA claims against Rushmore and SLS to proceed through discovery but dismissed them to the extent that an accounting was sought as an equitable remedy.  (*Id.*)  The parties participated in the Court annexed mediation program but mediation failed.[3]  (Docket No. 115).

After the conclusion of discovery on July 20, 2018, SLS filed a Motion for Summary Judgment, (Docket No. 150), a brief in support thereof, (Docket No. 151), and a concise statement of material facts with supporting exhibits, (Docket No. 150).[4]  Plaintiff filed a brief in opposition and a response to SLS's concise statement of material facts on August 31, 2018.  (Docket Nos. 162, 165).  On September 14, 2018, SLS filed its reply brief and a reply to Plaintiff's response to its statement of material facts.  (Docket Nos. 166, 167).  In its reply to Plaintiff's response to its statement of material facts, SLS objects to a number of Plaintiff's responses and suggests certain facts should be deemed admitted for a lack of response: Fact Nos. 5, 12, 13, 21, 23-24, 28, 31-44, 46-48, 51-57, 65, 69.  (Docket No. 167).

---

[3]     Pursuant to the Court's Local Rules, alternative dispute resolution is mandatory.  *See* L.R. 16.2.
[4]     SLS's concise statement of material facts does not number each fact consecutively.  (Docket No. 150-1).  The Court will use Plaintiff's numbering.

On that same date, Rushmore filed a Motion for Summary Judgment, (Docket No. 152), brief in support thereof, (Docket No. 153), supporting affidavit, (Docket No. 154), and concise statement of material facts with supporting exhibits, (Docket Nos. 155-56). Plaintiff filed a response to Rushmore's concise statements of material facts, (Docket Nos. 161, 164),[5] and a brief in opposition to Rushmore's motion for summary judgment, (Docket No. 163), on August 31, 2018. Rushmore filed a reply brief on September 14, 2018, (Docket No. 169), and a reply to Plaintiff's response to its concise statement of material facts with supporting exhibits contending that some of Plaintiff's responses did not comply with Local Rule 56 or this Chamber's Rule Section II(E) (Docket No. 168). Specifically, Rushmore objects to Plaintiff's responses to Fact Nos. 8, 11-13, 18-22, 24, 29, 31-51, 53-54, 79, and 90 and argues they should be deemed admitted. (*Id.*)

The Court held oral argument on October 9, 2018 and ordered supplemental briefing addressing the "motion to strike the affidavit of Thomas Dausch." (Docket No. 173). The transcript was filed of record on November 6, 2018. (Docket No. 175). Plaintiff filed his supplemental brief on October 19, 2018. (Docket No. 174). Rushmore filed its response on November 27, 2018, (Docket No. 176), and SLS filed its response on November 29, 2018, (Docket No. 177). By memorandum order dated December 4, 2018, the Court struck the affidavit of Thomas Dausch. (Docket No. 178). The Court now turns to the pending summary judgment motions.

---

[5]      Plaintiff filed two responses to Rushmore's concise statement of material facts. (Docket Nos. 155-56). They are identical.

III.    FACTUAL BACKGROUND

The Court must first address Defendants' contentions that Plaintiff's responses to their concise statements of material facts are deficient before addressing the relevant facts for purposes of the motions for summary judgment.  Local Civil Rule of Court 56.C.1 explains

> **1. A Responsive Concise Statement.** A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:
> **a.** admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;
> **b.** setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record (See LCvR 56.B.1 for instructions regarding format and annotation); and
> **c.** setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment;

LCvR 56.C.1(a)-(c).  This Court's Chamber's Rule II provides similarly. Chamber Rule II.E.

Additionally, Local Civil Rule of Court 56E reads that the facts claimed to be undisputed and material in

> the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment *be deemed admitted unless* specifically denied or otherwise controverted by a separate concise statement of the opposing party.

LCvR 56.E (emphasis added).

On a number of occasions in violation of Local Rule 56 and Chamber Rule II.E, Plaintiff failed to cite to the record after denying the allegations in Defendants' concise statements of material facts.  These facts are thus deemed admitted with the exception of those where Plaintiff responded that the writings speak for themselves.  *See 714 Ventures, Inc. v. Nat'l Oilwell Varco, L.P.*, No. CV 15-925, 2016 WL 5919934, at *1 n.1 (W.D. Pa. Oct. 11, 2016) (deeming facts admitted for violation of Local Rule 56.E).  The Court's factual findings are as follows.

Plaintiff is the owner of real property located at 1017 Schweitzer Road, McKeesport, Pennsylvania 15135. (Docket Nos. 162 ¶ 1; 164 ¶ 2). On June 25, 2007, Plaintiff obtained a loan on the property in the amount of $94,000.00. (Docket No. 164 ¶¶ 1, 2). The Mortgage provides, in relevant part:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.

(Docket Nos. 155-2 at 6; 164 ¶ 17).

Plaintiff defaulted under the terms of the Note and Mortgage and a foreclosure action was commenced on January 18, 2011 in the Court of Common Pleas of Allegheny County. (Docket Nos. 162 ¶ 2; 164 ¶ 3). SLS and Plaintiff settled the 2011 Foreclosure Action. (Docket No. 164 ¶ 5). As part of the settlement, Plaintiff and SLS executed a Loan Modification Agreement. (*Id.*; Docket Nos. 162 ¶ 3; 164 ¶ 5). Pursuant to the Modification Agreement, Plaintiff was required to pay monthly principal and interest payments in the amount of $582.98 beginning January 1, 2013 and continuing each month until the mortgage was fully paid. (Docket No. 164 ¶ 6). The Modification Agreement also required that Plaintiff maintain an escrow account for the payment of real estate taxes and insurance premiums. (*Id.* ¶ 7).

The servicing of the Plaintiff's Note and Mortgage was transferred to Rushmore on February 1, 2013. (*Id.* ¶ 8; Docket No. 162 ¶ 4). At the time of the transfer, Plaintiff had a monthly payment of $961.90, and Plaintiff was current on his payments. (Docket No. 164 ¶¶ 9-10). Plaintiff defaulted on the Note and Mortgage just two months after servicing was transferred by failing to timely make his April 1, 2013 payment. (*Id.* ¶ 11). Rushmore notified Plaintiff of his

default.  (*Id.*)  Thereafter, Plaintiff consistently made his monthly mortgage payments between thirty and sixty days late and never made a timely payment again.  (*Id.*  ¶¶ 12, 15).  Rushmore repeatedly sent correspondence to Plaintiff advising him of his payment defaults.  (*Id.* ¶ 13).

On April 4, 2014, Rushmore conducted its annual escrow analysis of Plaintiff's Mortgage and issued an Annual Escrow Account Disclosure Statement and Change of Payment Notice ("Notice of Payment Change").  (*Id.* ¶ 14).  The analysis showed a shortfall in Plaintiff's escrow account because the annual real estate taxes and homeowner's insurance premium exceeded the amounts collected during the prior year.  (*Id.*)  As a result, Plaintiff's escrow payment increased by $60.16 resulting in a new monthly payment of $1,022.72 beginning with the June 1, 2014 payment.  (*Id.*)  The April 4, 2014 Notice of Payment Change was sent to Plaintiff's property and was not returned to Rushmore.  (*Id.*)

Up until August 2014 (with a few exceptions), whenever Rushmore received a delinquent payment, if the payment was insufficient to cover the monthly payment amount, it applied funds from Plaintiff's suspense account and accepted it as late or held the funds in the suspense account until there was sufficient money for a full payment.  (*Id.* ¶¶ 18-22).  In or around August of 2014, Rushmore increased Plaintiff's monthly payments.  (Docket No. 162 ¶ 5).  Rushmore, exercising its right under the mortgage to return any partial payment, returned Plaintiff's August payment because it was insufficient to pay the total amount of the delinquency.  (Docket No. 164 ¶¶ 23-24).  Thereafter, Rushmore began returning Plaintiff's partial payments.  (Docket No. 164 ¶¶ 25-27).  Every time Rushmore returned Plaintiff's checks, it advised him that they were being returned because they were insufficient to pay the total amount due or asked him to contact customer service directly.  (*Id.* ¶ 28).  At some point, disagreeing with Rushmore's accounting, Plaintiff hired an attorney in August 2014 to address his claims against Rushmore.  (Docket No. 164 ¶¶ 5-6).

Plaintiff then began a letter writing campaign to Rushmore. By letter dated July 23, 2014, Plaintiff informed Rushmore his loan was current and inquired why inspections were occurring on his property. (Docket No. 155-14). A recipient's address was omitted from this letter and the Court is left to speculate where it was sent. (Docket No. 155-14). Rushmore responded to Plaintiff by letters dated August 1, 2014 and September 8, 2014. (Docket No. 164 ¶ 30). Rushmore confirmed his loan was three payments delinquent, provided him with his loan payment history, designated Angeline Horner as a person he could telephone with questions or concerns regarding the account or discuss payment assistance, explained its right to conduct home inspections citing a specific provision of the mortgage, and provided Plaintiff with a copy of his mortgage. (Docket No. 155-16 at 3-4). It bears mentioning that Horner's physical address was not provided in the letter only her telephone number. (*Id.* at 4).

Subsequently, Plaintiff sent a letter dated September 3, 2014 to Horner at 1755 Wittington Place, Suite 400, Dallas, TX 75234 asking why his August check was returned, accusing Rushmore of unilaterally altering his modification agreement, threatening legal action, and accusing Rushmore of harassment. (Docket No. 150-3 at 27). Nine days later, on September 12, 2014, Plaintiff sent another letter to Horner seeking the same information and asking why Rushmore believed he was three payments overdue. (*Id.* at 29). Just over two weeks later, by letter dated September 30, 2014, Plaintiff sent a third letter to Horner. (*Id.* at 31). This time inquiring why his escrow payments increased, seeking copies of checks, asking again why his August check had not been cashed, and attaching a letter he stated demonstrated that all his late fees were waived. (*Id.*) All of the letters directed to Horner were sent to an address other than the designated one. (*Id.* at 27-31).

By letters dated September 17, 2014 and October 23, 2014, Rushmore responded to Plaintiff's September 3, 2014 letter and explained that Rushmore had notified Plaintiff of the escrow increase and enclosed a copy of the Change of Payment Notice that was sent to Plaintiff in April 2014. (*Id.* ¶ 35; Docket No. 150-3 at 36). Rushmore also provided Plaintiff with a point of contact, Brian Pound, to discuss the loan and informed Plaintiff that he was two months delinquent and contractually due for the September 1, 2014 monthly installment. (Docket No. 150-3 at 36).

Plaintiff sent a letter dated October 16, 2014 to Pound of Rushmore's Loss Mitigation Department to 1755 Wittington Place, Suite 400, Dallas, TX 75234 asking about the source of the suspended funds, requesting an explanation why his escrow payments had increased, inquiring why his August and October checks had not yet been cashed, seeking a response within twenty-one days, and threatening legal action. (Docket No. 150-3 at 33-34).

Then, on November 6, 2014, Plaintiff wrote to J. L. DuVall also at Rushmore's Compliance Department, 1755 Wittington Place, Suite 400, Dallas, TX 75234: "Your recent correspondence date[d] October 23 does not explain anything. If you did notify me of the increase, you would have attached a copy of that notification to your response." (Docket No. 163-1 at 2). Rushmore responded again by letters dated November 24, 2014 and December 30, 2014. (Docket Nos. 155-20 at 3; 164 ¶ 36). In Rushmore's December 30, 2014 letter, written in response to Plaintiff's September 3, 2014 letter, it indicated that Rushmore investigated the matter and Plaintiff was properly notified of the payment increase; it included the proper documentation addressing Plaintiff's concerns; enclosed Plaintiff's payment history for the period that Rushmore serviced the loan; provided a full and complete explanation of the application of fees and suspense account funds to Plaintiff's loan; denied Plaintiff's request to change the date of the monthly increase; and

refused to waive any late fees. (Docket No. 155-20 at 3-4). Pound was listed as the point of contact on the letter. (Docket No. 155-20).

In his February 27, 2015 letter addressed generally to Rushmore at 1755 Wittington Place, Suite 400, Dallas, TX 75234, Plaintiff requested the same information he previously demanded: the origin of the suspense account funds, why his escrow payments had increased, and why Rushmore had refused his mortgage payments. (Docket No. 150-3 at 42-43). Again, Plaintiff threatened legal action. (*Id.*) By letters dated March 12, 2015, and April 16, 2015, Rushmore responded to Plaintiff's February 27, 2015, March 6, 2015, and March 29, 2015 letters stating that it had already responded to the same inquiries in its September 8, 2014, October 23, 2014, and December 30, 2014 letters. (Docket Nos. 150-3 at 45-46; 164 ¶ 38). It further noted that it was not required to respond to the same complaints after it had already addressed them unless Plaintiff proffered new information. (Docket No. 150-3 at 45-46). Despite having previously answered Plaintiff's questions, Rushmore provided a lengthy explanation of how the suspense account amount was calculated. (*Id.*) Rushmore wrote that Plaintiff's account was eight payments delinquent and that Plaintiff was contractually past due for September 1, 2014. (*Id.*) Given the delinquency of the loan, Rushmore stated that further late payments would not be accepted and would be returned. (*Id.*) Pound was listed as the point of contact on the letter. (Docket No. 155-22).

On April 22, 2015, in a letter addressed to DuVall at 15480 Laguna Canyon Road, Suite 100, Irvine, CA 92618, Plaintiff requested a copy of the letter sent by Rushmore to him concerning the escrow increase. (Docket No. 163-3). Rushmore's May 19, 2015 letter responded to Plaintiff's April 22, 2015 letter and provided Plaintiff with another copy of the Notice of Payment Change, enclosed a payoff statement good through May 31, 2015, and provided Plaintiff again with a

written explanation as to why his payments were being returned, i.e., they were less than the total amount needed to pay off the loan. (Docket Nos. 155-23 at 3; 164 ¶ 39). Pound was listed as Plaintiff's single point of contact. (Docket No. 155-23).

Two days later in a letter dated May 27, 2015 to J.L. DuVall at 15480 Laguna Canyon Road, Suite 100, Irvine, CA 92618, Plaintiff once again requested the same information, complained of Rushmore holding eleven checks for which he was incurring late charges, and demanded a letter of apology. (Docket No. 150-3 at 48). By letter dated May 29, 2015 to DuVall at 15480 Laguna Canyon Road, Suite 100, Irvine, CA 92618, Plaintiff again complained that Rushmore refused to cash his checks, asked why Rushmore cashed some checks but not others, asked why his escrow payment increased, informed Rushmore that he refused to speak with Rushmore by phone, and complained that stress was ruining his retirement. (Docket No. 163-4). Plaintiff also offered up a proposal: that the original loan modification be reinstated. (*Id.*)

By letter dated July 16, 2015, Rushmore responded to Plaintiff's May 29, 2015 letter. (Docket No. 155-25). Rushmore explained that Plaintiff's payments were returned because they were insufficient to cure the loan, his proposal was rejected, and Rushmore responded with additional information surrounding the escrow increase. (Docket No. 155-25 at 3). Plaintiff was also informed he was eleven payments delinquent and that Pound was his single point of contact. (*Id.* at 4).

On August 10, 2015, Plaintiff sent a letter to Pound at 1755 Wittington Place, Suite 400, Dallas, TX 75234 asking for "all information that DuVall says you can supply me." (Docket No. 57-11). Rushmore sent a letter to Plaintiff on August 10, 2015 responding to Plaintiff's letter dated "July 17, 2015",[sic] advising him again that his payments were returned due to insufficient amounts to cure the loan, that his proposal for repayment was rejected, and that all payments less

than the total balance due would be returned due to the delinquency of the loan. (Docket No. 155-26 at 3). Rushmore advised Plaintiff that it attempted to contact him several times, that it was not required to keep responding to the same complaints, and provided contact information for his single point of contact. (*Id.* at 3-4).

On August 13, 2015, Plaintiff sent another letter to Pound at 1755 Wittington Place, Suite 400, Dallas, TX 75234 asking about his escrow increase, complaining that Rushmore only cashed some of his checks, inquiring why his taxes had been paid by SLS, requesting that his credit rating be repaired, and seeking a further breakdown of the amount Rushmore claimed he owes. (Docket No. 150-3 at 52-53). About a month later, Plaintiff sent a letter to the CEO of Rushmore at 7515 Irvine Center Drive, Irvine, CA 92608, making various complaints and asking the CEO to intercede. (*Id.* at 55). Within ten days, Rushmore responded to Plaintiff's August 18, 2015 and September 15, 2015 correspondence explaining that it had conducted an investigation regarding why it returned his payments, stating it processed one payment in error and put it into the suspense account, articulating how it applied his payments, and enclosing a payment history and a copy of the loan and corporate advance activity. (Docket No. 155-27 at 3). Pound was listed as the single point of contact. (Docket No. 155-27 at 4).

By letter dated October 23, 2015 to DuVall at 15480 Laguna Canyon Road, Suite 100, Irvine CA 92618, Plaintiff complained of Rushmore's representatives coming to his door and the emotional distress it was causing him. (Docket No. 150-3 at 61-62). Rushmore's November 4, 2015 response to Plaintiff's September 15, 2015 letter identified all of his previous correspondence, and stated that after an investigation, "Rushmore has reasonably determined we have adequately answered your prior written inquiries but, as the delinquency is still unresolved and many of the points in your recent correspondence are repeated from prior correspondence, we

would like the opportunity to speak with you to clarify your proposal to resolve the issue." (Docket No. 57 at 64). Tim Lightfoot was listed as Plaintiff's new point of contact. (*Id.*) Subsequently, Rushmore attempted to contact Plaintiff by telephone eleven times from February 2015 until October 2015, but Plaintiff did not answer or return any of Rushmore's calls. (Docket No. 164 ¶¶ 50-51).

Despite Plaintiff being informed on February 15, 2013 that all NOEs and QWRs must be sent to: Rushmore Loan Management Service, LLC, Compliance Department, P.O. Box 52262, Irvine, California 92619 and the address featured prominently on Rushmore's website, Plaintiff failed to send any of his letters to that address. (*Id.* ¶¶ 54-59). Additionally, Plaintiff was notified on each mortgage statement where to send QWRs and NOEs. (Docket No. 168-3). Furthermore, Plaintiff testified that no one told him to contact Rushmore in writing via any other address. (Docket No. 164 ¶ 57-60).

On or around December 28, 2015, servicing of Plaintiff's mortgage loan was transferred back to SLS. (Docket No. 162 ¶ 7). Seven days later, SLS informed Plaintiff in writing that SLS was servicing the loan and advised him that any NOE or QWR must be sent to P.O. Box 630147, Littleton, Colorado 80163-0147. (Docket Nos. 150-6; 162 ¶ 13). Thereafter, Plaintiff authorized SLS to communicate with Plaintiff through his attorney. (Docket No. 162 ¶ 9).

Between December 28, 2016 and May 9, 2016, SLS sent Plaintiff at least three letters expressly reminding him that all NOEs and QWRs must be sent to the designated address. (Docket Nos. 150-6 – 150-8; 162 ¶ 12). During this period, Plaintiff was also receiving regular monthly mortgage statements from SLS that contained the contact information for SLS's various departments including the location to send NOEs, requests for information, and QWRs and provided SLS's website address where Plaintiff could learn more information. (Docket No. 162

¶¶ 17-19).  Plaintiff admitted to receiving monthly statements from SLS and expressly acknowledged that these statements set forth the proper address for delivering a QWR or NOE. (*Id.* ¶ 22).

On January 12, 2016, Plaintiff's former counsel sent SLS correspondence to P.O. Box 636005 writing that Plaintiff "disputes this debt and demands verification of the debt and the name and address of the original creditor."  (*Id.* ¶ 23; Docket No. 150-13).  Two months later, SLS responded and provided, *inter alia*, a breakdown of the amount of the debt and the identity of the original creditor.  (Docket No. 162 ¶ 25).  As part of its communication, SLS reminded him that if he wished to further "dispute the validity of the debt," that Plaintiff should write to SLS at "Specialized Loan Serving LLC, P.O. Box 636005, Littleton, Colorado, 80163-6005" within thirty days.  (*Id.* ¶¶ 26-27; Docket No. 150-14).  Despite being told at least seven times that QWRs must be sent to a specific address, Plaintiff (and/or his counsel) failed to send any of his letters there. (Docket No. 162 ¶ 30).  In a letter dated May 9, 2016 addressed to SLS at P.O. Box 636005, Littleton, CO 80163, the prescribed address to dispute the validity of the debt, Plaintiff argues he sent a NOE.  (Docket No. 150-15).  In that letter, he also informed SLS that problems with his mortgage servicing began in July 2014 with Rushmore and suggested that SLS contact Rushmore for further clarification.  (*Id.*)  Plaintiff contended:

> In relation to your correspondence the following applies.
> • The loan modification received via the Allegheny Court System dated November 26, 2012 is attached.  SLS was the loan management firm at that time. SLS offered me a modification but kept loosing[sic] document[s] supplied by me such as back[sic] accounts, taxes, etc.  SLS then decided to place my home into foreclosure. I purchased this house in 2004 for $90,000.  Due to all of the additional fees to get a modification the balance owed has risen to almost $138,000.
> • The modification states that principle balance is $105,955.35.  The amount capitalized is $32,020.62.  The total owed is $137,975.97.  The monthly payment will be $959.39.
> • This modification was transferred from SLS to Rushmore immediately.  It remained at Rushmore until January 1, 2016 when it was transferred back to SLS.

• The Rushmore payment is broken down to $582.98 P&I and $376.41 escrow. During the stay at Rushmore the payment was altered to $1022.72, then to $1080, then back to $1022.72. Rushmore was asking for $582.98 in P&I and $439.74 in escrow. See attached.

• Rushmore cashed all monthly payments during 2013. They[sic] cashed ten monthly payments during 2014 and placed the funds from payment July 2014 in suspended funds. The only payment cashed by Rushmore during 2015 was April and that money was also placed in suspended funds.

• The May 2016 payment coupon from SLS states that the monthly payment is now $969.63 with $1,752.82 in suspended funds. Total due is $20,662.55.

• Rushmore did not cash 13 monthly payments. SLS has not cashed 5 monthly payments. SLS claims that the monthly P&I is $583.25. The P&I times 18 payments not cashed equals $10,493.64. SLS is asking for escrow in the amount of $6,959.70. Adding the outstanding P&I and escrow equals $17,453.34. Additionally Rushmore and now SLS are charging me $29.14 as a late fee for each check not cashed for a total of $524.52. I am also being charged interest on unpaid interest that would have been paid if Rushmore/SLS would have cashed the checks.

• Total taxes for my home are approximately $3500 per year and the insurance is $1100. I personally paid the insurance for 2016 myself. Rushmore failed to pay the real estate taxes for 2015. I additionally paid that bill myself. Rushmore/SLS has held $1752.82 in suspended funds yet I am not getting any interest on this money. Your May statement says I am $5,522.80 in arrears for the escrow account.

• Rushmore conducted a vigorous schedule of home inspections at my residence as a harassment tactic. I was informed that my account was being charged for each inspection. See attached list.

• SLS & Rushmore ruined my credit. See attached.

(*Id.*)[6] Plaintiff continues:

I am open to a solution to this problem but I will not pay any excess fees to SLS or Rushmore to solve this problem. My family has been put in a position of enormous stress by Rushmore and now SLS. I am a senior citizen with one outstanding loan, a mortgage. This problem is approaching two years in length and I assure SLS it won't go on much longer. I will accept the following.

• All late fees and additional fees applied by Rushmore/SLS must be removed from my account. My family did nothing wrong. This was initiated by Rushmore without my family being aware of their actions. I consider these actions as FRAUD.

• All additional interest charged to my account by not cashing the monthly checks must be removed.

• I will receive interest on all suspended funds.

• I will only pay the P&I monthly and will pay the taxes and insurance myself.

• Rushmore/SLS will refund to me the late fees I incurred due to the fact that Rushmore did not pay the 2015 real estate taxes. See attached.

---

[6]      The attachments were not made part of the record.

• I must receive a written apology from Rushmore/SLS for creating this problem and causing the enormous mental stress to my family.

• I will furnish SLS with a bank account number so the P&I can be deducted on the 1st of each month. This will limit any contact between my family and SLS.

• Rushmore/SLS must return to me all outstanding checks being held for the past due 18 months. As each check is received by me, I will issue a check for the P&I for that particular month to bring my account current.

• SLS paid the 2016 County Taxes on my property without notifying me. I am a senior citizen. In Allegheny County I can receive a 30% discount once my application is approved. That is why I didn't pay it immediately myself. I am waiting for official approval. SLS must reimburse me the 30% savings.

• All correspondence must be in writing so there are no misunderstandings.

• Any solution to this problem must first be approved by my legal team.

Please reply to me in writing ASAP so we can solve this problem amicably or in the court system. This dispute must end now.

(*Id.*) In response, in a letter dated May 17, 2016, SLS responded:

Specialized Loan Servicing LLC ("SLS") has received your letter regarding the above referenced loan, however not at our designated address for such inquiries.

Please note all Notices of Error and Requests for Information (Including Qualified Written Requests), must be submitted in writing to:

Specialized Loan Servicing LLC
PO Box 630147
Littleton, CO 80163

Your case is currently under review. We realize the urgency of your inquiry and we appreciate your patience. We will have a response issued to you within state and/or federal regulated timeframes.

(Docket No. 150-11). SLS provided a further response by letter dated June 13, 2016. (Docket No. 150-12). SLS explained that "according to our records the account balance and payments are correct." (*Id.*) It informed Plaintiff that the fees were related to a prior servicer and included "a copy of the prior servicer's fees, prior servicer's payment history, [and] SLS payment history along with [SLS's] transaction codes for [Plaintiff's] review"; that $23,414.14 was due and owing; that it was "unable to accept funds for less than the total amount due"; and that SLS could not remove the escrow altogether due to Plaintiff's delinquent payments. (*Id.*) SLS pointed out that it could

not comment on Rushmore's earlier servicing. (*Id.*) Plaintiff was also advised that he had the right to request the documents SLS relied upon in reaching its determination and that SLS was unable to accept funds for less than the total amount. (*Id.*) Finally, SLS notified Plaintiff that "[i]f you believe that there was fraud or feel this account was 'misrepresented' on this loan before or after this loan closed we have attached a fraud package to be completed." (*Id.*) Plaintiff was also told to call Customer Care if he had any questions. (*Id.*) Yet, Plaintiff did not submit a fraud packet. (Docket No. 162 ¶ 45). Pursuant to SLS's policy, a quality control check of the investigation was performed to ensure the research was properly conducted and appropriate correspondence was timely sent. (*Id.* ¶ 48).

Plaintiff testified that he did not give credence to SLS's letter because it was signed by "Mary, Teller ID #4444" whom he erroneously assumed to be a bank teller. (*Id.*¶ 50). Mary was, in fact, employed in SLS's Customer Care Support, which handles QWR investigations and responses. (*Id. ¶* 56).

IV. LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, deposition testimony, admissions, and/or interrogatory answers to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

V.   DISCUSSION

It this Court's estimation, there are no genuine disputes of material fact and Defendants are entitled to judgment as a matter of law. Plaintiff's RESPA claims against SLS and Rushmore fail because Plaintiff never triggered either servicers' obligations under RESPA given that he repeatedly sent his letters to addresses other than Defendants' designated addresses. The Court

alternatively holds that Defendants are entitled to summary judgment because there is no evidence of record that SLS or Rushmore failed to perform a reasonable investigation. The Court's analysis follows.

RESPA was enacted to provide consumers "with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). Plaintiff raises two types of RESPA violations: QWR and NOE. RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). The parties agree that each of the letters at issue were either QWRs or NOEs.

Where the borrower sends a QWR relating to an error in the servicing of the mortgage or NOE to a servicer, the servicer must comply with various procedures.[7] With regard to

---

[7] Under the Code of Federal Regulations, a NOE and a QWR are treated identically where the QWR asserts an error relating to the servicing of the mortgage. 12 C.F.R. § 1024.35(a). An "error" refers to any

(1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.
(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.
(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).
(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).
(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.
(6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).
(7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.
(8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.
(9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).
(10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).
(11) Any other error relating to the servicing of a borrower's mortgage loan.

*Id.*

acknowledgement, a servicer must within five days (excluding legal public holidays, Saturdays, and Sundays) of receiving the QWR or NOE provide the borrower with a written response acknowledging receipt of the correspondence.  12 C.F.R. §§ 1024.35(d).  Additionally, the servicer must respond substantively not later than 30 days (excluding public holidays, Saturdays, and Sundays after receipt) by explaining and either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> (B) Conducting a *reasonable investigation* and providing the borrower with a written notification that includes a *statement* that the servicer has determined that *no error occurred*, a statement of the *reason or reasons for this determination*, a statement of the *borrower's right to request documents* relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and *contact information, including a telephone number, for further assistance*. . . .

§ 1024.35(e) (emphasis added).[8]  Where the request is duplicative, the servicer need only inform the borrower that it will not reply to the duplicative notice within five days of making such a determination.  § 1024.35(g)(2).  Finally, most important to this case, "[a] servicer may, by written

---

[8]    The statute relating specifically to NOEs similarly provides:
(1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
    (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
    (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
    (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
    (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
    (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
12 U.S.C. § 2605(e)(2).

notice provided to a borrower, *establish an address* that a borrower *must use* to submit a [QWR or NOE] in accordance with the procedures in this section." § 1024.35(a), (c) (emphasis added). "A servicer that designates an address for receipt of notices of error must post the designated address on any Web site maintained by the servicer if the Web site lists any contact address for the servicer." § 1024.35(c).

The parties disagree as to whether sending a request to an address other than the one designated by the servicer negates a servicer's duty to respond; however, Plaintiff's counsel admitted at oral argument that his view that it does not is the minority view. (Docket No. 175 at 38). The Court of Appeals for the Third Circuit has not yet addressed this issue. Additionally, the District Courts in this circuit have reached conflicting results as to this issue. *Compare Purpura v. JPMorgan Chase*, Civ. Act. No. 16-3765, 2017 WL 1250993, at *6 (D. N.J. Mar. 24, 2017) (finding that even though the rule is somewhat draconian because "[p]aintiff did not mail his QWR to Chase's proper address, [that] [c]ount is dismissed with prejudice") *and Binder v. Westar Mort., Inc.*, Civ. Act. No. 14-7073, 2016 WL 3762710, at *6-*8 (E.D. Pa. July 13, 2016) (explaining that because Binder did not submit letters to the proper address regardless of whether or not they were received, they were not QWRs as a matter of law) *with Benner v. Bank of Am.*, *N.A.*, 917 F. Supp. 2d 338, 364 (E.D. Pa. 2013) (asserting that whether a QWR is actually received is dispositive). However, the most recent District Court opinions in this circuit have found that unless a QWR or NOE is sent to a designated address, there is no RESPA violation. *Purpura*, Civ. Act. No. 16-3765, 2017 WL 1250993, at *6; *Binder*, Civ. Act. No. 14-7073, 2016 WL 3762710, at *6-*8.

Other Circuit Courts have been uniform in holding that the failure to send a RESPA request to the correct address negates a servicer's duty to respond. *Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 919 (11th Cir. 2017) (providing "[i]f a servicer designates a particular address for receiving

20

QWRs, Regulation X requires a borrower to mail a QWR to that address to trigger the servicer's duty to respond"); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014) (holding that "[a]s long as a servicer complies with the notice requirements . . . for designating a QWR address, a letter sent to a different address is not a QWR, even if an employee at that address (who may not have training in RESPA compliance) in fact responds to that letter"); *Dale v. Selene Fin. LP*, Civil Act. No. 16-4296, 2018 WL 2222598, at *1 (6th Cir. Mar. 16, 2018) (finding a servicer had no duty to respond where the QWRs were sent to an address other than the designated address); *Warren v. Green Tree Servicing, LLC*, 663 F. App'x 703, 709 (10th Cir. 2016) (reaffirming that a servicer has no duty to respond to a mortgagor's RESPA requests that are sent to an address other than the designated address).

As to Plaintiff's RESPA claim against SLS, the only letter that Plaintiff sent to SLS that he contends falls within the purview of RESPA is his May 9, 2016 letter. (Docket No. 165 at 3-4). Plaintiff sent this letter to P.O. Box 636005 rather than the designated address, P.O. Box 601347. (*Id.* at 4). SLS's designated address appeared on Plaintiff's mortgage statements and in at least three letters sent to Plaintiff prior to his of May 9, 2016. (Docket Nos. 150 – 150-8; 162 ¶¶ 17-19, 22). Rather than using the address that was repeatedly provided to Plaintiff and posted on SLS's website to address his concerns relating to the servicing of his mortgage, Plaintiff opted to send his request to the address he received after his attorney sought to challenge the validity of the underlying debt. (Docket Nos. 150-13; 162 ¶¶ 17-19). While this Court noted in its earlier opinion that the addresses are quite similar, that address was specifically provided to Plaintiff's counsel in response to a question. (Docket No. 150-3). Resolving any question as to whether Plaintiff sent his NOE to the proper address is the fact that SLS specifically informed Plaintiff on May 17, 2016

that he had sent his NOE to the wrong address. (Docket No. 150-11). Therefore, SLS is entitled to summary judgment because RESPA was not triggered by Plaintiff's May 9, 2016 letter.

With regard to Plaintiff's claims against Rushmore, despite Plaintiff being informed on February 15, 2013 that all NOEs and QWRs must be sent to: Rushmore Loan Management Service, LLC, Compliance Department, P.O. Box 52262, Irvine, California 92619 and the address featured prominently on Rushmore's website, Plaintiff did not send any of his letters to Rushmore's designated address. (*Id.* ¶¶ 54-59). He failed to do so despite the fact that he was reminded on each mortgage statement where to send QWRs and NOEs. (Docket No. 168-3). Furthermore, Plaintiff testified that no one told him to send QWRs and NOEs to the addresses he used. (Docket No. 164 ¶¶ 57-59). Accordingly, despite writing prolifically to Rushmore, summary judgment is entered in favor of Rushmore because none of the letters Plaintiff sent to Rushmore can constitute a QWR as a matter of law.

The Court finds that Plaintiff's claims against SLS and Rushmore also fail because both Defendants sufficiently responded to each of Plaintiff's requests after conducting a reasonable investigation.[9] A mortgage servicer is required to draft a response to a NOE and QWR that – if the servicer indicates that no error was found – includes "a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance." *Wilson*, 48 F. Supp. 3d at 804-05 (quoting 12 C.F.R. § 1024.35(e)(1)(i)(A)). To that end, the servicer must "provide 'a statement of the reasons for which the servicer believes' the accounting

---

[9]     This Court will not address Plaintiff's untimeliness arguments given that none of his letters were sent to the servicers' designated addresses. As courts have recognized this rule exists because "[o]nce a borrower serves a QWR on a servicer, the servicer has only a short period of time in which to respond to that request." *Purpura*, Civ. Act. No. 16-3765, 2017 WL 1250993, at *6.

is correct." *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 507 (E.D. Pa. 2010) (citation omitted). "A reasonable explanation of the servicer's belief is sufficient, even if it is later determined that the belief is erroneous." *Id.* at 509. However, the regulation "imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement. . . ." *Wilson*, 48 F. Supp. 3d at 804.

Contrary to Plaintiff's assertion, SLS performed a reasonable investigation which is patently evident from its June 13, 2016 letter. (Docket No. 150-12.) SLS provided Plaintiff with a written explanation that no error had occurred, stating that $23,414.14 was due and owing and that it could not remove the escrow account altogether as Plaintiff's account was delinquent, informing Plaintiff that it was unable to accept funds for less than the total amount, and attaching a copy of the prior servicer's fees and prior servicer's payment history with an explanation of the codes. (*Id.*) SLS then explained that it could not comment on Rushmore's earlier servicing. (*Id.*) Plaintiff was informed he had the right to request the documents relied upon in reaching the determination. (*Id.*) Plaintiff was also provided with a fraud packet to complete if he did, in fact, believe that his account was misrepresented. (*Id.*) Plaintiff was told to call Customer Care and provided with a phone number should he have any questions. (*Id.*) Prior to sending out this letter, SLS performed a quality control check of the investigation. (Docket No. 162 ¶ 48.) Despite having the benefit of discovery, Plaintiff has not put forth any evidence to support his belief that a reasonable investigation did not occur. Said another way, there is nothing in the record to suggest that SLS did not conform to its duty to perform an investigation.

As to Plaintiff's argument that the documents attached to the letter are incomprehensible, SLS complied with the regulation by attaching those documents that it relied upon in rendering its determination that there were no errors on the account and explained why it believed so in the

body of the letter. (Docket No. 165 at 7). Certainly, if Plaintiff had any questions regarding the account he or his lawyer could have contacted Customer Care. (Docket No. 150-12). There is no record evidence that either did. Therefore, summary judgment is entered in favor of SLS on this alternative basis as well.

With respect to Plaintiff's allegations against Rushmore, Plaintiff references a number of letters that he believes demonstrate that Rushmore failed to reasonably investigate his QWR but he fails to proffer a cogent argument as to how each of these letters supports his contention. (Docket No. 163 at 6-9). At this stage in the case, it is Plaintiff's burden to make a clear argument and present sufficient evidence of a genuine issue of material fact. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). The only argument Plaintiff develops is that Rushmore did not properly respond to Plaintiff's letter asking why his August 2014 check was returned. (Docket No. 163 at 9-10). However, the record contains a letter from Rushmore to Plaintiff explaining that Plaintiff's escrow funds had increased and consequently, his mortgage payment had increased as well. (Docket No. 150-3 at 36). Furthermore, with each returned check Rushmore informed Plaintiff that the amount he was paying was insufficient. (Docket No. 164 ¶ 28). Thus, Plaintiff's RESPA claims against Rushmore are without merit because he has failed to set forth evidence that a reasonable investigation did not occur and summary judgment in favor of Rushmore is likewise appropriate.

VI.     CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are GRANTED. An appropriate order follows.

*/s Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: March 28, 2019

cc/ecf: All counsel of record.